No. 37,351

JIMMIE BREWER, *Petitioner,* v. R. H. HUDSPETH, Warden of the Kansas State Penitentiary, *Respondent.*

(200 P. 2d 312)

Opinion filed December 11, 1948.

*Charles W. Lowder,* of Kansas City, argued the cause, and was on the briefs for the petitioner.

*Harold R. Fatzer,* assistant attorney general, argued the cause, and *Edward F. Arn,* attorney general, was with him on the briefs for the respondent.

The opinon of the court was delivered by

WEDELL, J.: This is an original proceeding in habeas corpus.

On August 21, 1947, the petitioner was convicted, pursuant to a plea of guilty, of burglary in the second degree and of larceny while committing the burglary, and was sentenced to confinement

in the state penitentiary on the burglary conviction for a term of not less than five years nor more than ten years, as provided in G. S. 1935, 21-523, and on the larceny conviction for not less than one year and not more than five years, as provided by G. S. 1935, 21-534, the sentences to run consecutively.

While various grounds are alleged for the issuance of a writ counsel for petitioner now stresses two grounds, namely, lack of proper representation of counsel appointed by the district court and that the judgment and sentence are void by reason of failure to have a fair and impartial trial.

We have carefully examined all grounds of the petition, other than the two stated, and are convinced that under the repeated decisions of this court none of them can be sustained.

The first ground now argued is stated in the amended petition filed pursuant to a motion and order to make the petition definite and certain relative to the alleged improper representation by counsel in the criminal action. The allegation reads:

". . . that the court appointed counsel on the 21st day of August, 1947, about ten minutes before the court passed judgment and sentence on the petitioner; that the petitioner did not have time to talk to the said attorney about his case; that the said attorney did not inform him of his rights; that the said attorney told him that, as he did not have any money the only thing for him to do was to plead guilty; that no competent counsel would have allowed the petitioner to be forced to trial without being indicted by a grand jury, nor allowed all of his constitutional rights to be denied him, nor allowed the officials to put the rush act on him and force him to enter a coerced plea of guilty against his will and wishes, under pressure of coercion, duress, trickery, threats and deceit. That by reason of such actions on the part of the officers of the court and the prosecuting officials in charge of his case, he was denied the right to assistance of counsel in violation of the provisions of the 6th Amendment of the Constitution of the United States of America."

Respondent has generally denied these allegations. The averment of improper representation due to the fact petitioner was not charged by a grand jury indictment is without merit. The affidavit of the county attorney at the time of plea and sentence, in substance, discloses: The petitioner and two others involved in the offense freely and voluntarily confessed the entire crime and freely signed a written confession before him and two sheriffs; petitioner requested him "to get the thing over as soon as possible, as I want to start doing my time and maybe I will learn a lesson"; he fully

explained petitioner's rights to him but that notwithstanding such explanation the petitioner insisted on entering his plea on August 20; on that date petitioner waived his preliminary hearing but was informed it would be impossible to enter his plea before the district court until the following day; when the district court ascertained petitioner was without counsel and without funds to employ counsel the court immediately appointed Robert T. Patterson, a practicing attorney who was present in the courtroom, to advise and represent petitioner; Mr. Patterson requested an opportunity to confer privately with the petitioner, which was granted; Mr. Patterson examined the statutes and conferred with petitioner approximately one hour, after which petitioner and his counsel advised that petitioner was desirous of entering his plea immediately; the court directed the reporter to make a transcript of the proceeding and that was done; petitioner voluntarily entered a plea of guilty; there was no pressure, promise or coercion of any character exerted to obtain the plea and petitioner was deprived of no rights.

An affidavit of the district judge, in substance, discloses: He had been advised of petitioner's written confession but that prior to arraignment he appointed counsel for petitioner; Mr. Patterson conferred with petitioner privately and at a later hour the court was advised by such counsel and the county attorney that petitioner was anxious to be arraigned on that day, August 21; that insofar as he knew petitioner entered his plea voluntarily and without pressure, promises or coercion.

The affidavit of Mr. Patterson discloses, in substance: The district court appointed him to represent petitioner and recessed court for the purpose of permitting him to counsel with petitioner; he was advised by petitioner that he had made a free and voluntary confession to the county attorney, that he had committed the offense charged and in the manner detailed to the county attorney; he reviewed the pertinent statutes and advised petitioner he was entitled to a free and impartial trial by jury; after discussing every detail of the case petitioner informed him he had committed the offense and desired to enter his plea in order to start serving his sentence as soon as it could be arranged; the matter was handled just as petitioner wished it to be; his plea was free, intelligent and voluntary.

A review of this portion of the record convinces us petitioner has not met the burden of proof on the first ground alleged. It is, however, argued by his counsel that the charge of inadequate representa-

tion is also involved in the second ground. We shall bear that contention in mind and refer to it later.

The second ground urged is that petitioner did not have a fair and impartial trial. The specific point under this contention is that the district court erred in not having a hearing prior to the plea to determine petitioner's mental competency.

This court admits that such reason is not alleged in either petition and that it entered the case for the first time on oral argument by petitioner's counsel before this court and was followed by an inquiry by a member of this court. The inquiry was not made on the theory we were prejudging the question but only to make certain petitioner's rights were fully protected. No blame is attached to petitioner's present counsel for failure to allege the point as a ground for release. He did not prepare the original petition. Counsel for respondent was, of course, not factually prepared to meet the point. Although the latter has procured pertinent supplementary affidavits they insist the question is not properly before us and should not be considered. Respondent's counsel stress the fact it is not even now contended petitioner was mentally incompetent to understand his plea or demand a valid defense. With commendable frankness petitioner's counsel concedes that but asserts the facts before the district court at the time of sentence compelled it, as a matter of law, to have a hearing touching petitioner's sanity before it accepted his plea. The question of petitioner's mental capacity was raised in connection with a letter addressed to the warden by the judge of the district court at the time of petitioner's commitment. A copy of the letter is appended to this opinion and is made a part hereof.

A supplemental affidavit of the district judge filed by respondent, in substance, discloses:

The affidavit was made at the request of the attorney general; he was not acquainted with the petitioner or any members of his family prior to August 21, 1947; the county attorney informed him of petitioner's desire to enter a plea of guilty; he inquired of peace officers into the history and background of petitioner and was informed as follows:

"Petitioner desired to enter his plea as soon as possible; that approximately thirty or thirty-five years ago and prior to the birth of petitioner the father of petitioner had escaped from a mental institution in the state of Missouri; that continuously since that escape the father had lived in Treece, Cherokee County, Kansas, had worked as a miner and had lived a normal life other than

as previously stated; petitioner's father and all of his brothers were high tempered, addicted to drinking and all of the male members of the family had been in trouble numerous times and had been convicted numerous times of various offenses including larceny, drunkenness and peace disturbance; several years ago an older brother of petitioner was shot and killed by a police officer in the performance of his duty; another older brother of petitioner had been inducted into the armed services of the United States during World War II and had 'cracked up' while in the service and following his discharge had been in various veterans' hospitals due to a mental disorder."

The affidavit, in substance, further discloses affiant did not know the exact nature of the latter brother's disorder but that his mental disability had been established as "service connected"; that petitioner was rejected by the army because of "mental inaptitude"; that on arraignment petitioner did not display any unusual or abnormal conduct but appeared to be aware of and to understand the proceedings; it was not suggested by anyone that petitioner was not competent and able to comprehend his position or that formal inquiry should be made into his mental condition; affiant did consider petitioner to be of below average mentality but that he believed him to know the nature and quality of his actions and able to comprehend his position; *affiant entertained no real doubt as to petitioner's sanity or his mental capacity to defend himself properly.*

An affidavit of Mr. Patterson in the criminal case, in substance, discloses: Petitioner had every appearance of possessing normal mental capacity, talked freely relative to the punishment which might be imposed and stated he wished to start serving his sentence as soon as arrangements could be made to do so; petitioner showed no signs of mental deficiency or incompetency, insanity or any other mental derangement which in any way indicated to him that he did not have full capacity to know the seriousness of the charge and the penalty that would be imposed; *he was certain petitioner was capable of understanding and did understand the nature of the crime committed and the punishment likely to be imposed.*

An affidavit of the county attorney, in substance, discloses: He had been personally acquainted with petitioner for more than five years and knew of his own personal knowledge that petitioner had never at any prior time or on the day of sentence manifested any signs, indications, actions or behavior which would show any form of insanity or mental deficiency except that petitioner stopped his

education at the age of sixteen years and as soon as his age exempted him from the truancy laws of the state; it was his personal opinion petitioner comprehended the seriousness of the charges filed against him and had mental capacity to understand that he was entitled to a trial by jury and that it was unnecessary to enter a plea of guilty; no actions, conduct, behavior of petitioner or knowledge ever led him to believe a commission should be appointed to inquire into petitioner's sanity.

An affidavit of the undersheriff of Cherokee county, in substance, discloses: He had been acquainted with petitioner since January 13, 1947, and had opportunity to visit him and observe his behavior pattern prior to and on the 20th and 21st days of August, 1947; petitioner's conduct never indicated he possessed a subnormal mind save and except that he had been involved in many criminal investigations; *he knew* that petitioner understood the nature of the charges and that his plea was free and voluntary; petitioner is somewhat nervous but affiant's sincere and honest belief was that petitioner was not mentally incompetent in any manner whatsoever.

The precise question presented is whether, in view of the record now before us, we can say, as a matter of law, the district court was obliged to entertain real doubt concerning petitioner's competency to enter his plea. If the court entertained such doubt it was required to order a hearing on its own initiative. Petitioner at the time of sentence was not quite twenty-two years of age. There was no suggestion of incompetency by the county attorney or by counsel who represented petitioner at the trial. Their affidavits, in effect, disclose there was nothing about petitioner's conduct to indicate he did not fully understand his rights or anything suggestive of inability to properly defend himself. Their affidavits, in effect, show that, in their opinion, there was no occasion for a sanity hearing. The affidavit of the undersheriff is to the same effect.

Of course, the fact these officers were aware of nothing to indicate petitioner's incompetency to enter his plea, if it existed, would in nowise relieve the court of its duty to order a hearing if it learned from observation, reasonable claim or any other credible source that real doubt existed concerning petitioner's mentality to comprehend his situation and to make his defense. These principles are established by a long line of decisions of this court and need not be reviewed. These and decisions from other jurisdictions were rather recently reviewed in a case in which the identical question of

the court's duty to order a sanity inquiry on its own initiative was presented. (*State v. Collins*, 162 Kan. 34, 174 P. 2d 126.)

On that point we held:

"It is the trial court in whose mind a real doubt of sanity or mental capacity to properly defend must be created before that court is required to order an inquiry solely on its own initiative. The necessity for an inquiry under such circumstances addresses itself to the discretion of the court and its decision will not be disturbed in the absence of abuse of sound judicial discretion." (Syl. ¶ 3.)

The statement contained in the letter from the district judge to the warden that petitioner was below par mentally undoubtedly constituted a fair and sincere analysis by the trial judge. His supplemental affidavit frankly recognizes the content of that letter but definitely shows petitioner's mentality was not of a sort to create a real doubt concerning his sanity or his mental capacity to defend himself properly; that he believed petitioner knew the nature and quality of his acts and was able to comprehend his position.

Everyone, of course, recognizes there exists a wide range between insanity and mentality which is merely below normal. Many people are below normal mentally and yet exceedingly able in many respects.

Careful analysis of the record, including the affidavits of the district judge, convinces us that although it would have been entirely proper to have had an inquiry we are not prepared to say the court abused sound judicial discretion in not ordering it. Here as in cases involving other factual questions the trial judge is in a far better position to view and evaluate the actions, demeanor and capacity of a defendant than is this court.

Returning now to the contention that petitioner was not properly represented by his counsel by reason of the fact he did not request a sanity hearing we need only say the record fails completely to support that contention. It does not even disclose petitioner's counsel was conversant with the facts the trial court ascertained. Relative to the test of inadequacy of representation by counsel see *Miller v. Hudspeth*, 164 Kan. 688, 192 P. 2d 147.

From what has been said it follows if the second point urged for a release is properly before us it cannot be sustained.

The writ is denied.

PRICE, J., not participating.

*"Warden, State Penitentiary,*

*"Lansing, Kansas.*             *"Re:* Jimmie Brewer.

"Dear Sir:

"I am writing this letter under the provisions of G. S., 1935, 62-1523, respecting Jimmie Brewer, sentenced this day upon his plea of guilty to not less than six nor more than fifteen years imprisonment in the penitentiary for the offenses of burglary and larceny.

"Mr. Brewer's home was in Treece, Kansas. He is one of six children and has been in constant trouble with the officers since he was about eight years of age. He has been arrested numerous times and has served jail sentences. He appears to be a confirmed thief.

"He has been in trouble on numerous occasions wherein boys younger than himself have been involved. On this particular charge he and a twenty one year old boy and a fifteen year old boy broke into a beer joint in the night time and stole two cases of beer, a quantity of cigarettes and candy and emptied the cash register.

"I am informed that on several different occasions Brewer has threatened people in his community with knives, pistols, shot guns and all sorts of weapons. He has also threatened peace officers at various times and at one time held up four officers at the point of a gun. His attitude is difficult to understand. He made a written confession of this particular offense but he has been sullen, defiant and somewhat uncooperative. Both before and after he was sentenced he told the officers he would never stay in confinement in the penitentiary but would break out, and he also made threats to kill some of the officers involved in this particular prosecution.

"I am also informed that this boy's father was confined and escaped from an insane asylum in Missouri prior to this boy's birth and also that this boy has a brother who is insane. I am also informed that this boy was rejected by the Army for mental inaptitude.

"While this boy is doubtless below par mentally, all of the officers and the people in his home community feel that he is beyond reform and that he should serve a long sentence. So far as I know, this is his first conviction of a felony.

"Trusting that this information may be of some benefit, I am

                           "Very truly yours,

                           "(signed) Jerome Harman

                           *"District Judge."*