No. 44,094

State of Kansas, *Appellee,* v. James Francis English, *Appellant,* and James Francis English, *Petitioner,* v. John Robinson, Superintendent, Larned State Hospital, *Respondent.*

(424 P. 2d 601)

Opinion filed March 4, 1967.

*Robert T. Cornwell,* of Wichita, argued the cause and was on the briefs for petitioner-appellant.

*Keith Sanborn,* County Attorney, argued the cause, and Robert C. Londerholm, Attorney General, and *Richard H. Seaton,* Assistant Attorney General, were with him on the briefs for appellee and respondent.

*Waldo B. Wetmore* and *Jim Lawing*, both of Wichita, were on the brief for Kansas Civil Liberties Union, *amici curiae*.

The opinion of the court was delivered by

KAUL, J.: James Francis English (petitioner-appellant), hereafter referred to as English or appellant, filed a petition for a writ of habeas corpus directly in this court and has also perfected an appeal from a conviction of forcible rape (G. S. 1949, 21-424, now K. S. A. 21-424) and commitment to the Larned State Hospital, hereafter referred to as Larned. John E. Robinson, Superintendent of the Larned State Hospital, is designated as respondent in the petition for a writ of habeas corpus. He will be referred to hereafter as respondent.

The Kansas Civil Liberties Union was granted leave to file a brief in appellant's behalf as *amicus curiae*.

The petition for a writ of habeas corpus was docketed with the appeal and the two proceedings are consolidated herein.

The issues raised by appellant in his petition for a writ of habeas corpus and also in his appeal are primarily focused on his conviction by plea of guilty, his commitment to Larned and his continued detention there.

On September 17, 1958, English was arrested and charged with the forcible rape of a Wichita housewife. He was brought before the court of Common Pleas of Wichita and a preliminary hearing was scheduled. On October 13, 1958, with his appointed attorney, English again appeared in the court of Common Pleas, waived preliminary hearing, and was bound over to the district court.

An information was filed and, on October 16, 1958, English and his attorney appeared before the district court, entered a plea of guilty, and made application to the court that English be sent to Larned. The court granted the application and ordered that English be "committed to the institution at Larned for diagnosis and treatment, and upon treatment be returned to this court for sentence." In this connection the journal entry provides in part as follows:

"That the defendant be and is hereby committed to the Larned State Hospital at Larned, Kansas, for observation and treatment as provided in Sections 62-1534 to 62-1537 of the 1957 Supplement to the 1949 General Statutes of Kansas until the further order of this court, and the Superintendent of this hospital is requested to report in writing to this Court when it appears said defendant has been restored mentally."

It appears from the record that different interpretations were applied to the court's order of October 16, 1958, as reflected by the subsequent actions, taken by the appellant and the Superintendent of Larned State Hospital, on the one hand and the trial court and the state on the other. As set out in the journal entry, the appellant was committed to Larned for observation and treatment as provided in G. S. 1957 Supp., 62-1534 to 62-1537, until the further order of the court. The superintendent was to report when English became mentally restored. The statutes referred to in the journal entry, now K. S. A. 62-1534 to 62-1537, provide as follows:

"That in case the conviction of any person for any offense against public morals and decency, as relating to crimes pertaining to sex, in which perversion or mental aberration, appears to be or is involved, or where the defendant appears to be mentally ill, the trial judge may, on his own initiative, or on the application of the county attorney, the defendant, or counsel for the defendant, or other person acting for the defendant, defer sentence until the report of a mental examination of the defendant can be secured to guide the judge in determining what disposition shall be made of the defendant." (62-1534.)

Section 62-1535 gives the trial judge optional authority to refer a defendant to a state hospital for the mental examination and report referred to in 62-1534.

Section 62-1536 provides in part:

"If the report of the examination by the psychiatrist shows that the defendant though not insane is so mentally ill or mentally deficient as to make it advisable for the welfare of the defendant or the protection of the community that he or she be committed to some institution other than the county jail, or the penitentiary, or industrial reformatory, the trial judge shall have power by virtue of this act to commit such defendant to any state or county institution provided for the reception, care, treatment and maintenance of such cases or similar mental cases, in lieu of a sentence to a county jail, the penitentiary or the industrial reformatory where required by law, and to direct the detaining of the defendant in such institution until further order of the court. . . ."

Section 62-1536 further provides for the right of an appeal from any order of commitment by the court to any such state or county institution. The statute further provides that such an appeal shall lie in the same manner and with like effect as if sentence to a jail, the penitentiary or the industrial reformatory had been imposed in the case.

Section 62-1537 provides that if, after commitment to any state or county institution, it appears that defendant has been restored mentally, he should be returned to the court where convicted, and

be sentenced or paroled as the court deems best under the circumstances.

The statutes above set forth will be referred to collectively hereafter as the "Sex Offenders Act" or the "Act."

Appellant was received at Larned on November 20, 1958. Approximately sixty days later the Superintendent of Larned reported to the trial court as follows:

"We wish to advise that the above named person, who was admitted to this hospital from Sedgwick County on November 20, 1958 as a District Court Case with a charge of Forcible Rape, has been presented before our medical staff.

"The diagnosis of Sociopathic Personality Disturbance, Sexual Deviation and Alcoholic Addiction was confirmed by the staff with the recommendation that he should be returned to the Court. We would appreciate your calling for him at an early date.

"We are enclosing a copy of the staff findings for your information."

The enclosed staff findings reflect the following:

". . . The crime for which he was charged was discussed with him.

". . . He . . . made the impression of not being aware of the seriousness of his offense. . . .

"It was agreed that this patient is competent and able to understand the nature of his actions. Therefore, he should be sent back for further disposition to the referring agency, as having received maximum hospital benefit and being free of psychosis.

"Prognosis: Poor, because of lack of motivation.

"Diagnosis: SOCIOPATHIC PERSONALITY DISTURBANCE, SEXUAL DEVIATION AND ALCOHOLIC ADDICTION."

Following the report of January 23, 1959, and during a period extending through July 1962, various reports of like tenor and reflecting substantially the same diagnosis were submitted to the trial court by the superintendent and other staff doctors of Larned. The import and significance of the language of the reports were later explained by Dr. Burdzik in his testimony. None of the reports described English as being mentally restored.

The record reflects no action by the trial court on the reports.

In 1964, applicant, through his attorney, filed a motion in the trial court entitled "Motion for Recall and Adjudication." Appellant was returned to the trial court and a hearing was had on May 13, 1964. Appellant was represented by the same attorney who had acted as his counsel throughout the entire proceedings, commencing in 1958. Prior to the hearing the court appointed Dr. C. J. Kurth, M. D. psychiatrist, and Dr. Donald W. Smitherman, a clinical

psychologist, to examine appellant to determine whether he is sane or insane and whether, though not insane, he is so mentally ill or mentally deficient as to make it advisable for the protection of the community that he be committed to an institution.

At the hearing on May 13, 1964, Dr. E. G. Burdzik, who was then acting Superintendent of the Larned State Hospital, was called as a witness by appellant. Dr. Kurth was called as a witness by the state and Dr. Smitherman's report of the mental examination of appellant was received by the court. There was no substantial variance in the testimony and reports of the doctors.

Dr. Burdzik testified that appellant's condition when he was first received at Larned in 1958 and at the present time is diagnosed as "sociopathic personality disturbance;" there is no known treatment for the illness other than confinement and no cure other than old age. English should be confined and that he would be as well-off in the penitentiary as at Larned and that he was competent to stand trial and aid in his defense.

Doctors Kurth and Smitherman agreed with the diagnosis and prognosis testified to by Dr. Burdzik. Dr. Kurth, however, recommended confinement at Larned for the subject's own good and the good of society.

After hearing the evidence the court again found, as it did following the 1958 hearing, "The defendant though not insane is so mentally ill as to make it advisable for the protection of the community and welfare of the defendant that the defendant be recommitted to Larned State Hospital until the further order of this Court."

Following the hearing appellant filed a notice of dismissal of his attorney on May 15, 1964. On the same day appellant filed a motion for permission to withdraw his plea and in the alternative requested the trial court to sentence him. The motion was overruled by the trial court on May 25, 1964. Subsequently, appellant filed a motion for rehearing which was overruled on July 27, 1964. On August 27, 1964, appellant filed a notice of appeal and present counsel was appointed by this court. Thereafter the original petition for a writ of habeas corpus was filed in this court on October 24, 1966.

In his brief appellant has consolidated his arguments in support of his petition for a writ of habeas corpus and his appeal from his conviction.

In his direct appeal appellant makes four assignments of error in his statement of points. (1) The trial court erred in allowing him to plead guilty. (2) The trial court erred in committing him to Larned. (3) The trial court deprived him of equal protection of the law. (4) The trial court inflicted cruel and unusual punishment.

In his petition for a writ of habeas corpus English alleges that he was unlawfully restrained of his liberty because of the reasons set out in the last three points stated above and further alleges that adequate relief is not available in any court of concurrent jurisdiction.

In its brief, *amicus curiae* attacks the constitutionality of the Kansas statutes concerning convicted sex offenders (K. S. A. 62-1534 to 1537, incl.), pursuant to the provisions of which appellant was committed to Larned on the grounds that the statutes referred to deny one charged with crime (1) equal protection of the law and (2) due process of the law.

The state's position is that the petition for a writ of habeas corpus should be denied for the reason that the allegations therein are without merit and that the appeal should be dismissed as not being timely perfected or in the alternative should fail for lack of merit.

We are first confronted with the assertion of the state that appellant's remedy is solely by way of habeas corpus and that the appeal should be dismissed as not timely taken as provided for in 62-1536, *supra.*

It appears from the lengthy and entangled record before us, an impasse developed between the trial court and the Superintendent of Larned as to the import of the trial court's order of commitment on October 16, 1958. It is apparent the superintendent considered the order committing English to Larned to be a referral for mental examination and report pursuant to the provisions of 62-1535, *supra.* It further appears the trial court considered the order to be a commitment pursuant to 62-1536, *supra,* entailing confinement in Larned until returned as mentally restored, as provided for in 62-1537, *supra.* This position is evidenced by the trial court's affidavit attached to respondent's amended answer to the petition for a writ of habeas corpus. In the affidavit referred to, the trial court states that prior to the arraignment proceedings on October 16, 1958, a conference was had between appellant's attorney, the deputy county attorney in charge of the case, and the court in chambers. At the conference appellant's attorney revealed that

appellant had been under treatment by Dr. Smitherman, a clinical psychologist, attached to the Poling Neuropsychiatric Center at Wichita, and that he had prepared a mental evaluation of English. The evaluation was presented to the court at this time. It disclosed that appellant, while capable of understanding the proceedings against him, should be closely confined in the mental hospital where he could receive treatment for mental disturbance leading him to commit acts of violence against women. The trial court further stated in its affidavit that it was agreed by all parties to the conference that if appellant were convicted he should be committed forthwith to the Larned State Hospital, pursuant to 62-1536, *supra*. The affidavit further recited that the court was aware of the facts and circumstances of the case and there was nothing in such circumstances to cause the court to have any doubt whatsoever of the appellant's mental capacity to understand the nature of the proceedings against him, comprehend his position, and make his defense.

An affidavit of appellant's counsel, concerning the original hearing, also is attached to respondent's answer. The statements are in accord with those of the trial court's.

The state contends that the judgment of the trial court, entered on October 16, 1958, amounted to a final commitment to Larned, pursuant to 62-1536, *supra,* rather than a referral for mental examination and report, pursuant to 62-1535, *supra,* and that therefore the time in which an appeal could have been taken, as provided for in 62-1536, *supra,* has long since expired before the perfecting of the present appeal.

The state also contends the last hearing on May 13, 1964, was merely for the purpose of determining whether or not the appellant had been mentally restored and any order entered therein was not appealable leaving only resort to habeas corpus as a proper remedy for appellant.

In view of the state of the record and in particular the uncertainty in the journal entry of the 1958 hearing wherein no specific reference is made to the particular statute, pursuant to which appellant was committed to Larned, reference being made only to all four sections of the statute involved, we have concluded the appeal should be considered on its merits.

The proceedings on May 13, 1964, were in all respects in conformity with a proceeding following an examination report, as pro-

vided for in 62-1536, *supra*. Since no evidence was offered at the 1964 hearing to indicate mental restoration of appellant at the time of the hearing or at any time prior thereto, subsequent to his arrest, the question of whether or not appellant was detained at Larned as referred for examination under 62-1535, or committed under 62-1536, is not material as to our disposition of the cases now before us. We are not confronted with an issue as to the validity of appellant's detention in Larned, pursuant to the court order of 1958, because such commitment has now been supplanted by the commitment of May 13, 1964, now under attack in this appeal and in the petition for a writ of habeas corpus.

The salient facts, garnered from the record, are: Appellant, during all proceedings, was represented by counsel; he voluntarily entered a plea of guilty and through his counsel requested commitment to Larned; the record shows that at the time of appellant's arrest and arraignment, and at all pertinent times subsequent thereto, and on May 13, 1964, appellant, while not insane, was suffering a mental illness, described and classified by all psychiatrists and psychologists, who treated or examined him, as *sociapathic personality disturbance*, that such illness is incurable within the realm of present psychiatric knowledge, and that appellant cannot be released without danger to society.

English contends first that the trial court erred in allowing him to plead guilty because the trial court knew that his mental condition was in doubt. He argues the district court erred in not having a hearing prior to the plea of guilty to determine his mental competency. As has been related, the trial court was well aware of appellant's mental aberrations by reason of the conference prior to arraignment. The existence of such mental aberrations, however, in and of itself, does not preclude the acceptance of a guilty plea when otherwise proper. In accepting a plea of guilty the same tests are to be applied by the court as in determining competency to stand trial.

It has long been recognized in this state that an insane person cannot be required to plead to a criminal charge and cannot be tried. (K. S. A. 1965 Supp. 62-1531 and 1532; *Van Dusen v. State*, 197 Kan. 718, 421 P. 2d 197; *State v. Daegele*, 193 Kan. 314, 393 P. 2d 978, cert. den. 379 U. S. 981, 13 L. Ed. 2d 571, 85 S. Ct. 686; *State v. Kelly*, 192 Kan. 641, 391 P. 2d 123; *State v. Severns*, 184 Kan. 213, 336 P. 2d 447.)

However, we have recognized also that the sanity of one charged with a crime involves two inquiries which are separate and distinct. First, sanity at the time of the commission of the alleged crime, and, second, sanity at the time of the trial. (*Van Dusen v. State,* supra.) The record here fully discloses that the trial judge, appellant's counsel, and the assistant county attorney were all aware of appellant's mental aberrations but no suggestion was made at arraignment, or prior thereto, that English was incompetent to enter a plea or to stand trial. The difference in the test to be applied in determining criminal responsibility from that applied in determining mental competency to stand trial is carefully delineated in the recent case of *Van Dusen* and need not be repeated. In the instant case the opinion of the trial judge that appellant was competent to enter a plea or stand trial at the time of his arragnment is buttressed by the psychiatric evaluations and expert psychiatric testimony contained in the record. The only question confronting us on appellate review as to this point is whether the trial court abused its discretion in accepting a plea of guilty without first ordering an inquiry concerning the matter.

In *Van Dusen* we held:

"It is the trial court in whose mind a real doubt of sanity or mental capacity to properly defend must be created before that court is required to order an inquiry solely on its own initiative. The necessity for an inquiry under such circumstances addresses itself to the discretion of the court and its decision will not be disturbed in the absence of abuse of sound judicial discretion." (Syl. ¶ 6.)

See, also, *State v. Andrews,* 187 Kan. 458, 357 P. 2d 739, cert. den. 368 U. S. 868, 7 L. Ed. 2d 65, 82 S. Ct. 80; *State v. Severns,* supra; *Brewer v. Hudspeth,* 166 Kan. 263, 200 P. 2d 312; and *State v. Collins,* 162 Kan. 34, 174 P. 2d 126.

In the instant case the record conclusively discloses that the trial judge was fully aware of appellant's condition. There is no indication or any real doubt in the trial court's mind as to the mental capacity of appellant to stand trial or enter a plea. We stated in *Van Dusen:*

". . . Many shades and degrees of mental illness may appear in the disposition of a criminal case. Evaluation thereof is best left in the sound discretion of the trial court which is in much better position to do so than an appellate court. We find no abuse of that discretion here." (p. 726.)

In *Lyles v. United States,* 254 F. 2d 725, cert. den. 356 U. S. 961, 2 L. Ed. 2d 1067, 78 S. Ct. 997, the court was confronted with

problems dealing with a defendant's competency to stand trial and the difference therein from the standard of measurement for responsibility for criminal act. As in the instant case defendant Lyles had been evaluated as a "Sociopathic Personality." A portion of the psychiatric testimony in *Lyles* is set out in the recent work by Katz, Goldstein and Dershowitz on "Psychoanalysis Psychiatry and Law." The testimony of the psychiatrist on the point is set out in Note 6 at page 602 where sociopathic personality is described as a form of personality disorder and not a psychosis nor insanity.

We find no abuse of discretion in allowing appellant to enter a plea of guilty on October 16, 1958.

Appellant contends the trial court failed to advise him as to the consequences of applying the sex offenders statutes to his case. The transcript does not reflect specifically any explanation of the trial court on this point. However, the record does disclose that appellant participated in the request for commitment to Larned and expressed a desire for such disposition of his case.

The identical situation confronted the Seventh Circuit Court of Appeals in the recent case of *Butler v. Burke*, 360 F. 2d 118, cert. den. 385 U. S. 835, 17 L. Ed. 2d 69, 87 S. Ct. 79, in disposing of a habeas corpus petitioner's attack on a state court commitment, the court stated:

"Petitioner contends that the trial Court's failure to inform him of the provisions of the Wisconsin Sexual Deviates Act before he entered his plea of guilty invalidated 'the apparent voluntary plea.' It seems implicit in this contention that while his plea of guilty was voluntarily made, the subsequent action of the Court in committing petitioner for treatment under the Act rather than sentencing him to prison nullified the plea. The essence of this contention rests on the erroneous premise that petitioner was sentenced under an Act which might deprive him of his liberty for life when he should have been sentenced for an offense which carries a maximum period of ten years in prison.

"Petitioner's contention in this respect overlooks the purpose of the Act under which he was committed. . . ." (pp. 122, 123.)

*Cullins v. Crouse*, 348 F. 2d 887, (10th Cir. 1965) was a habeas corpus proceeding instituted by a state prisoner who had been committed under the Kansas statutes in question. In disposing of the same contention as raised here, the court said:

". . . Appellant through his counsel invoked the Kansas statute. The situation is of his own making and he may not now complain. . . ." (p. 889.)

We find no prejudicial error in the trial court's acceptance of appellant's plea of guilty.

We are next confronted with the serious questions raised by appellant and *amicus curiae* concerning the constitutional vadility of the Kansas statutes involved. It is contended the stautes (K. S. A. 62-1534 to 62-1537, incl.) do not meet constitutional safeguards as to (1) equal protection of the law; and (2) due process of law; and (3) that commitment thereunder amounts to cruel and unusual punishment. The Kansas statutes in question are similar to most, and identical with some, of those enacted by other states. They are designed to cope with sex offenders who have committed crimes pertaining to sex where perversion or mental aberration appears to be involved.

At the outset it must be pointed out, the commitment procedure provided for in our Sex Offenders Act applies only to the sex offender who may be mentally ill but not insane. If the offender appears to be insane and not competent to stand trial he is entitled to a separate inquiry for a determination of this question. See K. S. A. 1965 Supp. 62-1531, *Van Dusen v. State,* supra; *State v. Andrews,* supra. If the contention of an accused is insanity at the time of the commission of the offense then the procedure for such determination is prescribed by the provisions of K. S. A. 1965 Supp. 62-1532. (*State v. Hoopengarner,* 195 Kan. 114, 402 P. 2d 815; *Fisher v. Fraser,* 171 Kan. 472, 233 P. 2d 1066, 29 A. L. R. 2d 699.)

In other words, the class segregated by the legislature, to which the statutes in question are applicable, are those offenders who have been convicted of an offense against public morals and decency pertaining to sex where mental aberration or perversion appears or where a defendant appears to be mentally ill. K. S. A. 62-1534, *et seq.,* relates only to those offenders who have been convicted which eliminates application to those incompetent to stand trial and those insane at the time of the commission of the crime. It is to this class of offenders to which our commitment procedure applies.

*Amicus curiae* contends that such is not a sensible classification. It is argued that an unconstitutional distinction is made between those allegedly insane and therefore having a right to a jury trial on the issue of sanity and in denying such right to those only mentally ill under the sex offender statute. This position is untenable.

As we have pointed out, K. S. A. 62-1534, *et seq.*, may be applied only "in case of the conviction of any person." The application of 62-1534, *et seq.*, does not preclude either a defense of insanity at the time of the commission of the crime or the separate and distinct matter of incompetency to stand trial either of which, if raised in the proceedings, must be determined before the *conviction* status is reached permitting the application of the commitment procedures prescribed in 62-1534 to 1537, *supra*.

For example, as applied to the instant case, English, if he had claimed incompetency to stand trial, could have resorted to the provisions of 62-1531, *supra*, for a determination of such issue, prior to either a trial or plea, or if he had claimed insanity at the time of the commission of the rape then, and in that case, he could have resorted to 62-1532, *supra*, even though he was charged with a crime pertaining to sex which, upon conviction, would have brought into play the possible application of 62-1534, *supra*, for the purpose of determining disposition.

*Amicus curiae* and appellant rely principally on *Baxstrom v. Herold* 383 U. S. 107, 15 L. Ed. 2d 620, 86 S. Ct. 760, in which a part of the procedural provisions of the New York Statute (§ 384 of the N. Y. Correction Law) pertaining to commitment of mentally ill persons convicted of crime was stricken down on the ground that it denied equal protection of the laws. Baxstrom, petitioner, was convicted of second degree assault and sentenced to a term of two and one-half to three years in a New York prison. Prior to the expiration of his prison term he was certified as insane by a prison physician. He was then transferred from prison to Dannemora State Hospital, an institution under the jurisdiction of the New York Department of Correction and used for the purpose of confining and caring for male prisoners declared mentally ill while serving a criminal sentence.

Baxstrom's penal sentence expired on December 18, 1961. In November 1961 the director of Dannemora Hospital filed a petition in the Surrogate's Court of Clinton County stating that Baxstrom's penal sentence was about to terminate and requesting that he be civilly committed, pursuant to § 384 of New York Correction Law.

On December 6, 1961, a proceeding was held in the Surrogate's Court is which Baxstrom was found to require mental care and treatment in an institution for the mentally ill. When Baxstrom's

penal sentence expired on December 18, 1961, custody then had shifted from the Department of Correction to the Department of Mental Hygiene, but he was retained at Dannemora Hospital.

Procedures are prescribed in New York for civil commitment of all mentally ill persons, other than those confined in Dannemora State Hospital in N. Y. Mental Hygiene Law §§ 72, 74, under which all persons civilly committed are expressly granted the right to *de novo* review by jury trial of the question of their sanity. The United States Supreme Court held that such a distinction amounted to a denial of equal protection. The court stated:

"We hold that petitioner was denied equal protection of the laws by the statutory procedure under which a person may be civilly committed at the expiration of his penal sentence without the jury review available to all other persons civilly committed in New York. . .. ."

". . . It follows that the State, having made this substantial review proceeding generally available on this issue, may not, consistent with the Equal Protection Clause of the Fourteenth Amendment, arbitrarily withhold it from some." (pp. 110, 111.)

The objectional distinction denying equal protection under the New York Statutes is not to be found in our statutes relating to the subject. Kansas has carefully safeguarded the rights of an alleged insane person and provided for a jury trial on demand in a proceeding for the commitment of such person (G. S. 1949, 39-203, now K. S. A. 1965 Supp. 59-2917). There is no provision in the Kansas statutes providing for a short cut commitment of an alleged insane person confined in a prison, whose term is about to expire, such as that stricken in *Baxstrom.*

The classification of persons convicted of crimes pertaining to sex, as set out in 62-1534, *supra,* substantially conforms to that of other states relating to sexual psychopaths. Similar classifications have been uniformly held not to deny equal protection of law. (24 A. L. R. 2d, Anno., Sexual Psychopaths, pp. 350, 358.)

In the leading case of *Minnesota v. Probate Court,* 309 U. S. 270, 84 L. Ed. 744, 60 S. Ct. 523, 126 A. L. R. 530, a classification of "psychopathic personality" in the Minnesota statutes was held not to violate the due process and equal protection clauses of the Fourteenth Amendment to the Federal Constitution.

In the recent case of *State v. Madary,* 178 Neb. 383, 133 N. W. 2d 583 (1965), the court was confronted with an attack on the constitutional validity of the Nebraska Sex Offenders Act: It was held

the provisions for the commitment of sexual psychopaths did not deny equal protection of the laws nor deprive the accused of his liberty without due process of law. See, also, *Trueblood v. Tinsley,* 148 Colo. 503, 366 P. 2d 655, 316 F. 2d 783 (10th Cir. 1963), cert. den. 370 U. S. 929, 8 L. Ed. 2d 507, 82 S. Ct. 1570.

The constitutional validity of the provisions of the Kansas Act in this connection was considered in *Cullins v. Crouse,* supra. The statutes in question were held to represent a proper and valid exercise of the state's police powers as a measure of public safety. We do not find denial of equal protection of the laws or deprivation of liberty without due process in the provisions of the Kansas Act.

Similar statutes in other states have been attacked on the ground that a commitment thereunder amounts to cruel and unusual punishment in violation of the Eighth Amendment to the Federal Constitution. Such a contention was made as to the Michigan statutes in *People v. Chapman,* 301 Mich. 584, 4 N. W. 2d 18, where it was held not to constitute cruel and unusual punishment on the ground that it was not a criminal statute.

In *Butler v. Burke,* supra, in discussing a similar Wisconsin statute the court stated:

"In fact, petitioner is in custody as a patient, not as a prisoner, committed for treatment and not sentenced for punishment. The duration of his commitment depends upon the manner in which he responds to treatment, which is subject to review by the committing Court at frequent intervals. . . ." (p. 123.)

The constitutionality of the Colorado Sex Offenders Act was challenged on this ground in the recent case of *Specht v. People,* 156 Colo. 12, 396 P. 2d 838, where it was held:

"Sentencing under Sex Offenders Act is not cruel and unusual punishment within the Eighth Amendment to the United States Constitution and Article II, Section 20 of the Colorado Constitution." (Syl. ¶ 2.)

See, also, cases collected in 24 A. L. R. 2d., Anno., Sexual Psychopaths (Cruel and Unusual Punishment), pp. 350, 362.

The purpose and intent of our Act is clearly set out in 62-1536, *supra, i. e.,* to commit such defendant to any state or county institution provided for the reception, care, treatment and maintenance of such cases or similar mental cases in lieu of a sentence to a penal institution. In our view, a commitment such as that provided for is humanitarian in purpose and a valid and proper exercise of the state's police power as a measure of public safety. It cannot be

deemed cruel and unusual punishment, within the purview of either the Eighth or Fourteenth Amendments to the Federal Constitution or Section 9 of the Bill of Rights of Kansas.

The rights of appellant were fully protected at the time he entered his plea of guilty. The psychiatrists' testimony as reflected in the record, manifestly shows that appellant was a proper subject for the application of K. S. A. 62-1534, *et seq.*, upon his conviction. The evidence further shows that he was not mentally restored on May 13, 1964, and that there had been no change in his mental condition since the date of his conviction (October 16, 1958).

For the reasons stated the petition for a writ of habeas corpus must be denied and the conviction affirmed. It is so ordered.