No. 44,948

STATE OF KANSAS, *Appellee,* v. EVERETT M. SWINNEY, *Appellant.*

(436 P. 2d 876)

Opinion filed January 27, 1968.

*Victor D. Goering,* of Hutchinson, argued the cause, and *John F. Hayes* and *R. J. Gilliland,* both of Hutchinson, were with him on the brief for the appellant.

*Richard J. Rome,* County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, and *Raymond F. Berkley* and *Patrick L. Dougherty,* both Assistant County Attorneys, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is an appeal by defendant, Everett M. Swinney, from a conviction of murder in the second degree. (K. S. A. 21-402)

The basic question involved is whether the trial court abused its discretion in accepting defendant's plea of guilty.

On November 6, 1965, defendant shot and killed his wife, Dora M. Swinney, with a .22 caliber pistol. He was apprehended within a few hours after the shooting. Later, on the same day, a complaint was filed charging defendant with murder in the first degree. Counsel was appointed and a preliminary hearing was held in the magistrate court on December 9 and 10, 1965. The defendant was bound over for trial in the district court and an information was filed December 14, 1965.

On February 24, 1966, defendant filed a petition for the appointment of a sanity commission. Accordingly, three medical doctors were appointed, they examined defendant, and on March 1, 1966, reported to the court that defendant was sane, able to comprehend his position, and able to make his defense.

On March 4, 1966, defendant filed a motion requesting that he be examined by two staff physicians of the Larned State Hospital. The motion stated that such an examination was necessary for a proper defense of defendant's case. The motion was presented to the district court and on March 8 the court ordered that defendant be taken to the Larned State Hospital to "be held in custody by said hospital and be given such care, diagnosis, treatment, study or analysis over a period of time not exceeding 90 days as to said hospital officials shall seem necessary and desirable, and at the end of such period of time required for such diagnosis, treatment, study and analysis, or at any prior time upon the further order of this Court, said hospital shall release the said defendant to the Sheriff of Reno County, Kansas, for return to this Court." The court further directed that any findings or conclusions be made available to defendant's counsel and the county attorney. The court's order did not create a second sanity commission but stated "That such referral of the defendant and his removal to the State Hospital at Larned, Kansas, is necessary under the facts and circumstances of this case to assist in the proper preparation for the defense of the charges brought against the defendant.'

The defendant was admitted to the Larned Hospital on March 15, 1966, and was returned to Reno County about the first of June 1966. The hospital report showed the defendant to be psychotic and unable to stand trial or consult with counsel at the time of his release.

On June 3, 1966, defendant filed a second petition for the ap-

pointment of a sanity commission. In response thereto a second commission was appointed by the court and given written instructions explaining the law of insanity in Kansas and directing the members of the commission as to their duties. The commission examined defendant and reported on July 1, 1966, that he was sane, able to comprehend his position, and to make his defense. Thereafter, on July 6, 1966, the defendant filed a motion requesting the court to empanel a jury for the purpose of determining his sanity. This motion was denied by the court.

July 15, 1966, the state filed a motion for an order allowing the state to have the defendant examined by two psychiatrists for the reason, as stated in the motion, "to combat the anticipated defense of insanity by the defendant." This motion was overruled on July 21, 1966. On the same day defendant's attorneys were served by the state with a written notice of intent to invoke the provisions of the Habitual Criminal Act. (K. S. A. 21-107a)

On July 22, 1966, an amended information was filed by the state and on the same day defendant appeared before the court with his court-appointed counsel, Gary L. Dinges and Elmer Goering, and entered his plea of guilty to second degree murder.

After an extended interrogation of defendant and his counsel the court accepted defendant's plea of guilty. The record of three prior convictions was presented to the court and, after examination thereof, the court received in evidence the record of two of the convictions and refused a third. Thereafter defendant was sentenced to life imprisonment in the Kansas State Penitentiary and notice of appeal to this court was filed several weeks later.

The defendant specifies ten points in his appeal but has only argued and briefed five. All of the matters urged by defendant go to the point whether or not his plea of guilty should have been accepted.

Defendant first argues the trial court erred in refusing to empanel a jury or to conduct a hearing to inquire into defendant's capacity to stand trial. As we have pointed out, at the request of defendant following his preliminary hearing a sanity commission was appointed and found defendant sane and able to make his defense. Next defendant, at his request, was taken to the Larned State Hospital for examination by staff physicians. After his return from Larned defendant filed a second petition for the appointment of a sanity commission and the court complied. The second commission found defendant sane and competent to stand trial. Defendant now

claims that a further investigation of his competency to stand trial should have been submitted to a jury.

At the outset it is to be noted that as declared both by statute (K. S. A. 1965 Supp. 62-1531 and 1532) and by a long line of decisions of this court the policy of the law of this state is not to try persons while they are insane. (*State v. English,* 198 Kan. 196, 424 P. 2d 601; *Van Dusen v. State,* 197 Kan. 718, 421 P. 2d 197; *State v. Daegele,* 193 Kan. 314, 393 P. 2d 978, cert. den. 379 U. S. 981, 13 L. Ed. 2d 571, 85 S. Ct. 686.)

K. S. A. 1965 Supp. 62-1531 provides in pertinent part as follows:

"Whenever any person under indictment or information, and before or during the trial thereon, and before verdict is rendered, shall be found by the court in which such indictment or information is filed, or by a commission or another jury empaneled for the purpose of trying such question, to be insane, an idiot or imbecile and unable to comprehend his position, and to make his defense, the court shall forthwith commit him to the state security hospital for safe-keeping and treatment; . . ."

Defendant's position appears to be that he claims a right to the exercise of all three provisions for a determination of his competency to stand trial rather than the right to exercise his choice of one of the three. In other words, since the commission requested by defendant found adversely to his desire he now seeks the application of the alternative provision of having his competency determined by a jury. The clear meaning of the statute is contrary to the position taken by defendant. The statute does not require the trial court to use all three of the prescribed methods to inquire into the accused's ability to stand trial. The statute merely authorizes the trial court to resolve the issue itself or by a commission or by a jury. In the case at bar the trial court first submitted the matter to a commission at defendant's request. After defendant's examination by a staff of physicians of the Larned State Hospital, which examination was directed to assist defendant in a preparation of his defense, rather than for a determination of his competency to stand trial, there appeared doubt as to defendant's competency. So again, at defendant's request, a second determination by a commission was secured. Thus the trial court gave defendant, at his request, the advantage of two statutory commission determinations. In addition it is obvious, from the record of the lengthy and careful interrogation of defendant, when confronted by his plea of murder in the second degree, the trial court in its own mind again carefully

considered and resolved the issue of defendant's ability to stand trial or enter a plea.

We have carefully examined the record of the trial court's interrogation of defendant immediately prior to accepting his plea. From the number and nature of the questions put to defendant it is obvious the trial court was deeply concerned as to defendant's mental condition. The record discloses that considering his education and background defendant's responses to the court's questions were intelligent and responsive. From the nature of the trial court's questioning, we believe that in accepting his plea the trial court again resolved the question of defendant's competency to stand trial, even though no specific finding to that effect was announced. Thus, in the instant case, defendant has been afforded two determinations by a commission as well as that of the trial court. We note that when he appeared before the court to enter his plea of guilty defendant did not renew his request to have a jury empaneled or ask for any further investigation as to his mental capacity. In *Van Dusen v. State,* supra, it was held:

"It is the trial court in whose mind a real doubt of sanity or mental capacity to properly defend must be created before that court is required to order an inquiry solely on its own initiative. The necessity for an inquiry under such circumstances addresses itself to the discretion of the court and its decision will not be disturbed in the absence of abuse of sound judicial discretion." (Syl. ¶ 6.)

Furthermore, we note from the record the trial court carefully advised defendant of his right to a jury trial, to subpoena witnesses, including witnesses who could testify as to defendant's mental capacity. The court also questioned defendant as to whether he had been fully advised as to his right to a jury trial by his counsel and received an affirmative answer. It is quite clear the trial court was fully convinced in its own mind that defendant was fully able to comprehend his position. Under the circumstances it cannot be said the trial court abused its discretion in accepting defendant's plea rather than on its own motion giving defendant resort to the third proviso of the statute by empaneling a jury to further consider defendant's ability to stand trial or enter a plea.

Defendant next argues that K. S. A. 1965 Supp. 62-1531, as implemented by the trial court, was not sufficient to satisfy the due process clause under the Fourteenth Amendment to the Constitution of the United States. The defendant in this connetcion contends the statute contemplates an investigation to determine the facts. The defendant

now claims that the court when confronted with conflicting evidence should have empaneled a jury and allowed the various physicians to be subpoenaed and the issue resolved by a jury even though such was not requested by defendant at the time he entered his plea. Defendant's contention is without foundation, the trial court had at hand the report of the Larned physicians as well as the findings of two sanity commissions. The court then proceeded to take great pains in examining the defendant. It must be implied that in accepting his plea of guilty the court determined defendant was sane and able to comprehend his position. Under the circumstances related, we believe the requirements of due process were fully met.

In his third point on appeal defendant claims the trial court erred in refusing to permit a psychiatric examination of defendant on behalf of the state. The request by the state was for the purpose of having defendant examined by its own psychiatrists in order to secure evidence to rebut defendant's anticipated defense of insanity. We know of no authority for such procedure and none is cited to us. We see no error in the trial court's denial of the state's request.

Defendant next claims error in permitting him to plead guilty to second degree murder against the advice of his attorneys when positive evidence of defendant's lack of capacity and insanity was before the court. The question here presented concerns sanity for the purpose of being triable. Sanity in this respect is determined by appraising the present ability of the defendant to understand the nature and purpose of the proceedings taken against him and his ability to conduct his own defense in a rational manner. (*State v. Brotherton*, 131 Kan. 295, 291 Pac. 954; *State v. Badders*, 141 Kan. 683, 42 P. 2d 943.) As we have indicated, before accepting defendant's plea the court examined defendant exhaustively as to his understanding of the proceedings and as to the voluntariness of defendant's plea. We believe that such painstaking consideration on the part of the trial court amounted to a hearing and a resolution by the trial court of the conflicting evidence on the issue. The trial court's findings that defendant's plea was voluntarily and intelligently entered, as set out in the journal entry, is supported by the record.

In his fifth contention defendant claims the trial court erred in its failure to order a bifurcation of the proceedings to determine whether or not defendant was insane at the time of the commission of the crime. This contention poses the question of what is the

duty of the trial court when defendant comes forward and enters a plea of guilty under the circumstances evinced in a case such as that at bar. As in any case the court must first determine whether or not the plea is voluntary. Secondly, where the court, as in this case, is made aware of evidence of possible insanity the competency or ability of defendant to enter the plea must be determined. This involves the awareness of defendant that insanity at the time of the commission of the crime would constitute a defense. In this connection the record discloses the court carefully explained to defendant that he had a right to a jury trial to determine his mental capacity at the time of the offense and that he could call witnesses to testify as to his insanity or any other defense which he might propose. The court further questioned defendant concerning the advice received from his counsel in connection with these matters. The responses to the court's questions as to these matters reveal that defendant fully comprehended his position and his rights. Under these circumstances we are unable to find any abuse of discretion on the part of the trial court.

As we have indicated, defendant has specified five other contentions in his statement of points. Even though these points are neither briefed nor argued by defendant we have considered each of them and find no merit therein in view of the record presented. All of the five points mentioned concern the invoking of the provisions of the Habitual Criminal Act. (K. S. A. 21-107a.) The record shows that on July 21, 1964, the day before defendant entered his plea of guilty, the state served notice on defendant and his counsel of its intention to introduce evidence of three prior convictions. When the records of the three prior convictions were submitted to the court two were received and admitted by defendant and a third was rejected by the court largely on statements made by defendant. We find nothing in the record presented which indicates any error in the imposition of sentence.

No error having been shown in any of the matters urged by defendant the judgment and sentence of the trial court must be affirmed.

It is so ordered.