NOT DESIGNATED FOR PUBLICATION

No. 112,895

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JIMMY L .WILSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed July 1, 2016.
Affirmed.

*Michael P. Whalen* and *Krystle M.S. Dalke*, of Law Office of Michael P. Whalen, of Wichita, for
appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek
Schmidt*, attorney general, for appellee.

Before BUSER, P.J., HILL, J., and WALKER, S.J.

*Per Curiam*:  Jimmy L. Wilson appeals from the district court's denial of his
postsentencing motion to withdraw his guilty plea. Since we find the record supports the
district court's decision, the district court did not abuse its discretion and the denial is
affirmed.

1

The State filed a complaint in 2013 against Wilson and several other defendants, bringing one count of aggravated robbery against him. Wilson later pled guilty to an amended simple robbery charge, submitting a signed acknowledgement of rights form that indicated, *inter alia*, Wilson knew of no reason why his mental competency should be questioned, he understood the court was not bound by any sentencing agreement between Wilson and the State and that any deviation from the agreement by the court would not create an opportunity to withdraw the plea, and the court could impose a prison sentence even when a probation sentence was presumptive. In a separate written plea agreement, the State agreed to recommend a dispositional departure at sentencing so that Wilson could receive a probation sentence instead of a custodial sentence.

At the plea colloquy, Wilson waived a preliminary hearing, verified that he had read, understood, and signed the acknowledgement of rights and plea forms, and that he signed the forms after having an opportunity for counsel to answer any questions. The district court explained the presumptive sentencing range, which Wilson acknowledged, and Wilson also indicated that he understood the court when it explained to him that the sentencing court could impose any lawful sentence, regardless of the terms of the plea agreement, and explicitly indicated that it was a matter of the discretion for the court to go along with the State's dispositional departure recommendation. Wilson confirmed that no additional promises had been made to get him to plead, entered a guilty plea to the sole amended count, and confirmed the factual basis for the offense. The court found that Wilson knowingly and voluntarily entered his plea.

At the later sentencing hearing, a different district court judge sentenced Wilson to 90 months' incarceration, followed by 24 months of supervised release. Wilson filed a pro se notice of appeal that challenged the evidence supporting the charge, which the district court treated as a motion to withdraw the plea. Wilson also moved the court to correct his

sentence, contending it was illegal due to errors in his criminal history. New counsel filed an amended motion to withdraw the plea, contending that Wilson suffered from mental disorders and previously had been diagnosed as mildly retarded and that prior counsel had failed to investigate and present evidence regarding these issues.

In a written memorandum, Wilson argued the following grounds for withdrawing his plea: (1) counsel promised Wilson that the sentencing judge would follow the plea agreement and sentence him to probation; (2) counsel waived a preliminary hearing without Wilson's permission; (3) counsel misrepresented the strength of the State's case against Wilson; (4) Wilson's criminal history included erroneous items and counsel failed to investigate his criminal history before the plea; (5) new counsel believed that Wilson was mentally impaired, such that he was not competent to enter a plea, and counsel was ineffective for failing to advise the court of Wilson's incompetence.

At a motion hearing before Judge Kaufman regarding the plea withdrawal, Wilson testified that, although he had completed 11 years of schooling, doctors had informed him that he had the education level of a third grader. He stated that he had comprehension trouble, anger issues, and a propensity to follow others due to his inability to understand. A doctor diagnosed him as mildly retarded in 2008, and he believed he was diagnosed as either bipolar or schizophrenic, but he could not precisely recall. Wilson testified that he trusted trial counsel, who told him the plea was in his best interests, the State had a strong case against him, and, based on a conversation with the judge, he would be sentenced according to the plea agreement.

Wilson testified that trial counsel did not complete a background check for Wilson's mental health or educational limitations and that counsel did not show him any evidence before Wilson entered his plea. He relied on counsel's representation that, despite his having committed the instant offense while out on bond for an earlier offense, he would be able to get probation for both offenses.

3

On cross-examination, Wilson testified that he would not have moved to withdraw his plea if the sentencing judge had acted in accordance with the plea agreement and sentenced him to probation. Wilson also confirmed that he went over the plea agreement with counsel but not his criminal history; and he stated that he understood when he entered his plea that the sentencing court was not bound by the plea agreement, although counsel told him on the day of sentencing that the judge would follow the agreement.

Defense counsel submitted into the record an intellectual disability evaluation from Dr. Jarrod Steffan, which was admitted without objection. In the report, Dr. Steffan indicated that he met with Wilson twice in 2014 and completed eight different assessment tests. Dr. Steffan determined that Wilson had a borderline IQ of 70 and a third-grade reading ability but noted that the findings were not indicative of mental retardation, an alleged past diagnosis for which Dr. Steffan had no documentation. Dr. Steffan also indicated that Wilson's complaints that his mental impairment was worsening were not reliable and that no major mental illness diagnosis was applicable. Dr. Steffan concluded that Wilson possessed adequate knowledge of plea agreements, legal rights, and the content and process of criminal legal proceedings; his decision-making and rational-thinking abilities were not significantly impaired; and, as a result, Wilson "was not experiencing debilitating symptoms of mental illness throughout the plea negotiations, consideration and acceptance of the plea agreements, and sentencing hearing in his present legal cases." Dr. Steffan concluded his report by noting that Wilson's "intellectual limitations and psychiatric symptoms were not sufficiently severe or pervasive to significantly interfere with his understanding of the plea agreements or with his entry of pleas and waiver of rights in his legal cases."

At the hearing, prior counsel testified that he did not have any reservations or concerns about Wilson's comprehension abilities prior to entering the plea in this case, and he recognized Wilson's limitations by going over things more thoroughly with him. He did not notice any mental issues causing him to believe that Wilson fell into the rare

4

category of individuals who were not competent, and he believed that Wilson had a grasp on what was going on in his case. Counsel denied ever telling Wilson that the sentencing judge would have to follow the plea agreement, although he did tell him in an immediately prior conviction that he would likely get probation and, in the instant case, he told Wilson that he hoped the judge would sentence him to probation. Counsel testified he did not visit the sentencing judge prior to sentencing or tell Wilson that he had done so, but he did tell him about a conversation with an attorney for a codefendant who advised him that waiving a preliminary hearing was prudent.

Counsel testified that, prior to the plea colloquy, he reviewed the facts of the case with Wilson, discussed the plea offer, and noted that Wilson never indicated that he was stressed or needed more time to consider the plea. Counsel told the judge at sentencing that entering the plea was Wilson's only logical choice, given the impossibility of getting probation following a trial, the issues surrounding the commission of an offense while out on bond, and the benefits of pleading to a reduced charge. Immediately following sentencing, Wilson told counsel that he wanted to withdraw his plea because the judge did not follow the plea agreement with respect to probation, accusing counsel of having tricked him out of a preliminary hearing.

On cross-examination, counsel acknowledged that an unusually short period of time passed from the charge in the instant case to the plea, between 14 and 18 days, and he explained that this happened, in part, because he was already in plea negotiations with the State on a prior case involving Wilson. The only time at which he would have discussed Wilson's educational background was when he worked with him to fill out the acknowledgement of rights form, and he did not think competency was an issue in either case. He could not recall if he had done a background or mental health history check related to previous representation, but he stated that he knew Wilson was "clearly slow," so he went over issues thoroughly and believed that Wilson understood.

5

At a later hearing, the district court concluded that Wilson had failed to meet the manifest injustice standard and found that his plea entry was voluntary, knowing, and intelligent. Additionally, the court concluded that Wilson had competent counsel during the plea process; that he was not misled, coerced, mistreated, or taken advantage of; and that the plea was fairly and understandingly made. For its factual findings, the court noted that it had relied, in part, on Dr. Steffan's report in concluding that Wilson's mental limitations did not significantly interfere with his understanding of the plea process and that Wilson's many pro se filings over the years demonstrated a understanding of the court system. Additionally, the court cited to the acknowledgment of rights form, where Wilson indicated there was no reason to question his mental competence, acknowledged that the sentencing judge was not bound by the agreement, and recognized that the judge's failure to abide by the agreement was not a basis for withdrawing a plea. The court referenced the portion of the plea colloquy transcript where the court advised Wilson that the sentencing court would not be bound to sentence him to probation, which Wilson acknowledged. The court found numerous additional facts related to the plea process and then conferred with the parties over initiating the appellate process. Wilson appealed.

ANALYSIS

In his first argument on appeal, Wilson argues that the district court abused its discretion by denying his motion to withdraw his plea, contending that he demonstrated that such a denial would result in manifest injustice because his plea was not knowingly and voluntarily made. He asserts that his mental limitations and limited education caused him to follow and trust counsel more than an ordinary defendant, and the court needed to consider this before determining whether his plea was knowing and voluntary rather than the product of this trust. He also argues that counsel was ineffective for failing to adequately investigate his mental health history, which would have been useful at sentencing. Wilson contends that a function of his mental impairment is that he follows

6

others and does not necessarily make his own decisions, thus undermining his assurances to the court that there was no reason to question his mental competence.

As a preliminary matter, we note that Wilson has not raised on appeal several of the matters he argued before the district court. These arguments include his claim that his criminal history was erroneous and that counsel waived a preliminary hearing without Wilson's permission, misrepresented the strength of the State's case, and promised Wilson that the judge said he would receive a probation sentence and not a custodial sentence. By not raising these arguments on appeal, Wilson has abandoned them. See *State v. Holman*, 295 Kan. 116, 125, 284 P.3d 251 (2012) (an issue not briefed by the appellant is deemed waived and abandoned).

This court reviews the denial of a motion to withdraw a plea for abuse of discretion. *State v. Freeman*, 292 Kan. 24, 27, 253 P.3d 1 (2011) (quoting *State v. Schow*, 287 Kan. 529, 541, 197 P.3d 825 [2008]).

> "Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

The defendant bears the burden of demonstrating the abuse of discretion, but the court's decision must also have been based on a correct understanding of the law in order to receive full deference. *Freeman*, 292 Kan. at 27-28.

When a defendant moves after sentencing to withdraw his plea, he must demonstrate that a denial of his motion would constitute manifest injustice. *State v. Kelly*,

298 Kan. 965, 968, 318 P.3d 987 (2014). Kansas courts review three factors commonly known as *Edgar* factors, after *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), when considering whether the requisite injustice has been shown: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Aguilar*, 290 Kan. 506, 511, 231 P.3d 563 (2010) (listing cases discussing *Edgar* factors). Defense counsel must advise a defendant of the range of possible penalties to a plea and discuss the possible choices with the defendant. *Kelly*, 298 Kan. at 970.

A voluntary plea implicitly requires a defendant to be competent. *State v. Shopteese*, 283 Kan. 331, 340-41, 153 P.3d 1208 (2007). As defined by statute, "a person is 'incompetent to stand trial' when he [or she] is charged with a crime and, because of mental illness or defect is unable: (a) To understand the nature and purpose of the proceedings against him [or her]; or (b) to make or assist in making his [or her] defense." K.S.A. 22-3301(1). Regardless of any mental derangement or infirmity, however, a defendant is competent if he or she understands the nature and purpose of the proceedings against him or her, grasps his or her condition and capabilities with regard to the proceedings, and can make rational defense decisions. *Shopteese*, 283 Kan. at 341 (quoting *Van Dusen v. State*, 197 Kan. 718, 722-23, 421 P.2d 197 [1966]).

Wilson has not demonstrated that he lacked competent counsel at the plea colloquy. Before the hearing, counsel advised Wilson of the facts of the case, the possible penalties associated with the plea, and the court's ultimate sentencing discretion, making a point to go over matters slowly and thoroughly given Wilson's limited ability to understand him. By stating that a full record his mental history would have helped him at sentencing, rather than at the plea, Wilson implicitly demonstrates that the impetus for his appeal was his dissatisfaction with the custodial sentence he received, as he indicated to counsel immediately after sentencing and acknowledged at the motion hearing, rather

than the receipt of incompetent counsel at the time of his plea. The record supports the district court's conclusion that Wilson received competent counsel during the plea process.

The precise contours of Wilson's argument that his plea was not knowing and voluntary are not clear. He contends that he had inadequate time to review the evidence against him, especially in light of his mental limitations, and he blindly trusted counsel's promise that he would be sentenced to probation. With respect to his competency, a necessary element of a voluntary plea, Wilson has not identified any aspect of the proceedings against him that he did not understand, nor has he illustrated that he was unable to make or assist in making rational defense decisions, providing no evidence that he was anything but competent. By signing the plea agreement and the acknowledgement of rights form, Wilson confirmed that there was no reason to question his mental fitness, he understood the sentencing court's discretion, and he was not confused by or unaware of any aspect of the plea. Counsel and the district court advised him before and during the colloquy of the possible penalties for the plea. Dr. Steffan's report, introduced by Wilson, supports the district court's conclusion that any mental impairments Wilson suffers from did not interfere with his plea entry, and Wilson has not otherwise demonstrated that he was incompetent to enter his plea or that his plea was not fairly or understandingly made.

We find the record demonstrates that Wilson was competent to enter his plea and that his plea was fairly and understandingly made. In sum, Wilson has not demonstrated that his plea was not both knowing and voluntary, denying his motion to withdraw resulted in manifest injustice, or the district court's decision was an abuse of discretion.

The second contention of Wilson on appeal, which is closely interrelated to his first contention, is that his counsel at the plea hearing was ineffective. When a postsentence motion to withdraw a plea alleges ineffective assistance of counsel, the

9

constitutional test for ineffective assistance must be met to establish manifest injustice. *State v. Bricker*, 292 Kan. 239, Syl. ¶ 5, 252 P.3d 118 (2011).

> "The first prong of the test for ineffective assistance of counsel requires a defendant to show that counsel's representation fell below an objective standard of reasonableness, considering all the circumstances. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. We must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. [Citation omitted.]
>
> "[Under the second prong of the test for ineffective assistance of counsel], the defendant also must establish prejudice by showing that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. [Citation omitted.]" *Bledsoe v. State*, 283 Kan. 81, 90-91, 150 P.3d 868 (2007).

This court reviews the district court's ineffective assistance analysis de novo. *Bledsoe*, 283 Kan. at 91. Factual findings are reviewed for substantial evidence. *Flynn v. State*, 281 Kan. 1154, 1157, 136 P.3d 909 (2006). A "reasonable probability" is defined as a "probability sufficient to undermine confidence in the outcome." *Kelly*, 298 Kan. at 970.

With respect to the ineffective assistance claim, Wilson fails to allege in his brief that, but for counsel's claimed error, he would not have pleaded guilty. All Wilson argued is that his alleged mental impairment made him more likely to follow others and not make his own decisions, which is not the same as an affirmative argument of prejudice. Wilson has the burden to prove both error and prejudice in order to establish

10

constitutionally ineffective assistance of counsel. Therefore, he cannot pursue this claim because he fails to argue the prejudice prong or that there was an applicable exception to having to argue prejudice.

Even had Wilson not abandoned the issue, however, his argument is meritless upon review. Wilson premises his ineffective assistance claim on the allegation that counsel "failed to alert the trial court that he was unfit for legal proceedings due to the fact that he has been declared mildly retarded by Comcare." In the remainder of his brief, however, he does not identify a single matter that he could not understand or any manner in which he was unable to make or assist in making rational defense decisions. Instead, he simply claims that his impairment caused him to quickly trust others and not necessarily make his own decisions. He does not affirmatively state that he did not make the decision to plead guilty but, rather, only suggests that this might have been the case, which does not sufficiently undermine the outcome so as to constitute ineffective assistance. Accordingly, Wilson has not demonstrated that counsel had any reason to challenge his competency before the court, nor has he demonstrated that counsel erred or that he was prejudiced such that there is a reasonable probability that, but for counsel's actions, he would not have entered the plea.

Affirmed.