No. 44,477

Larry Owen Van Dusen, *Appellant,* v. State of Kansas, *Appellee.*

(421 P. 2d 197)

Opinion filed December 10, 1966.

J. C. *Edwards*, of Iola, argued the cause and was on the brief for the appellant.

*Robert C. Londerholm*, attorney general, and *Frederick G. Apt, Jr.*, county attorney, were on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an appeal from an order denying appellant post conviction relief.

On October 21, 1958, appellant was arrested upon a warrant issued by the county court of Allen county, Kansas, charging one count of burglary in the first degree and larceny in connection therewith and one count of burglary in the second degree and larceny in connection therewith. In each instance the property alleged to have been stolen consisted of women's underwear. Appellant requested preliminary hearing upon these charges. Such preliminary hearing was set for November 12, 1958, at which time appellant appeared with his retained counsel, a member of the Allen county bar, and waived preliminary hearing and was bound over for trial in the district court of Allen county.

On November 17, 1958, appellant, then eighteen years of age, appeared on such charges in the Allen county district court without counsel. Upon a showing that appellant was destitute another member of the Allen county bar was appointed to represent him. Later upon the same day and after a recess the following proceedings occurred as reflected in the journal entry of judgment:

"The Court caused the defendant to stand and the charges as contained in Count 1 of the information were read to the defendant by the Clerk of the District Court. The Court advised the defendant as to the charges, the penalties involved, if the defendant understood said charges and penalties and if he had discussed this matter with his attorney, all of which the defendant answered in the affirmative. The Court thereupon asked the defendant how he pleads to the charge of burglary in the first degree. Defendant thereupon enters his plea of guilty. The Court thereupon asked the defendant how he pleads to the charge of larceny in connection with burglary. Defendant thereupon enters his plea of guilty.

"THEREUPON the Court finds that the pleas of the defendant are freely and

voluntarily made; that the defendant has been advised in this matter by his attorney and the Court accepts the pleas of guilty of the defendant and finds that said defendant is guilty of the offenses of burglary in the first degree and larceny in connection with burglary.

"THE COURT having examined the information and being fully advised in the premises asked the defendant if he has any legal cause to show why judgment should not be pronounced against him, the defendant having none and the Court knowing of none, the Court thereupon rendered judgment."

The court then sentenced appellant to the state industrial reformatory for the statutory period for the offenses of burglary in the first degree and larceny in connection therewith as contained in count one of the information, such sentences to run concurrently. The charges contained in the other count were dismissed.

At the time these sentences were imposed the sentencing judge was aware of a history of aberrant behavior by appellant consisting of the taking of female under apparel. A letter to the Allen county attorney from appellant's mother in California indicated she had first become aware of his behavior about four years previously. She had sought the help of a psychiatrist with the result that appellant was made a ward of the Orange county, California, juvenile court and committed to the Atascadero State Hospital in that state during the period from May 5, 1956, to June 15, 1957. He was discharged from that hospital with the notation "further treatment not beneficial."

It further appears that after appellant's commitment to the reformatory pursuant to the Allen county sentence he was released under parole about January 19, 1960. Thereafter and on July 18, 1960, he appeared in the district court of Stafford county, Kansas, being represented by court appointed counsel, and pleaded guilty to the offense of second degree burglary, which charge evidently involved the taking of women's under apparel from a Stafford county home. Upon the joint application of the Stafford county attorney and appellant's attorney the Stafford county district court referred appellant to the Larned State Hospital for examination and report pursuant to G. S. 1959 Supp. 62-1534 and 62-1535. Appellant evidently remained at the Larned hospital until September 20, 1961, when he was discharged with the indication as alleged by appellant "hospitalization was no longer required." Appellant was returned to the state industrial reformatory for parole violation under the Allen county sentence. On October 3, 1961, upon the motion of the Stafford county attorney the burglary charge against appellant in that county was dismissed.

In 1964 appellant filed in the Allen county district court his *pro se* motion pursuant to K. S. A. 60-1507 to vacate the sentence confining him to the reformatory. The motion was based primarily on his assertion of insanity at the time of the commission of the alleged offenses and upon the failure of the trial court to order a sanity hearing for him. Included in these allegations were claims of denial of effective assistance of counsel based upon lack of time to prepare a defense, and the making of a confession while insane. The trial court, without plenary hearing, denied appellant's motion as indicated in its memorandum decision to-wit:

"The application of the defendant in this case is based upon his contention that he was insane at the time he committed the offense for which he is now confined, and at the time he was arraigned and sentenced; and that such alleged condition of the defendant 'does not appear in the record, nor the error in the proceedings.'

"He further complains that he was not represented by a competent counsel and that he was not given time to prepare his defense. The record shows that he was produced in court prior to arraignment for the express purpose of inquiring into his representation, and that Mr. Charles Apt, eminently qualified, was appointed to represent him. Arraignment was postponed to such time as defendant and his attorney might indicate to the Court that he was ready to be arraigned. Arraignment was later the same day upon specific request of defendant and his attorney.

"At the preliminary hearing before the magistrate, the defendant was competently represented by John O. Foust. Both Mr. Apt and Mr. Foust are highly qualified, eminent counsel.

"At the time of arraignment and sentence, the history of the defendant relative to his treatment for mental illness was known to the Court and taken into consideration. There had never been an adjudication of insanity. His confinement in the Atascadero State Hospital in California was for a ninety day observation as an abnormal sex offender followed by a period as a voluntary patient. Shortly before he got in trouble in Allen County, Kansas he was discharged from and released by the United States Navy.

"At the time of arraignment and sentence it was apparent to the Court that the defendant's offense was in the category of abnormal sex crime but he was normally aware of his rights and of the nature of his offenses (breaking and entering and larceny) and had a clear comprehension of the criminal character of his acts.

"There is no allegation in the defendant's application that he had been adjudicated to be insane. Assertions to the effect the defendant was insane are mere conclusions of the defendant himself now made to promote his discharge from confinement.

"At best the application shows sexual abnormality which indicates the need for psychiatric treatment which had been previously received before he joined the Navy. In the case history sent with the commitment to the reformatory at Hutchinson, the County Attorney stated that the defendant was not legally

insane but was in need of 'any psychiatric treatment which is available' through the penal institutional facilities.

"The application recites that the defendant *is now sane* and has been so since his discharge on September 20, 1961 from the Kansas State Hospital at Larned where he was sent in connection with the offense committed while on parole from Hutchinson. If this means that the defendant has in fact been reformed from his criminal proclivities, and if he now enjoys a favorable record at Hutchinson, perhaps his remedy lies in application to the State Parole Board.

"The defendant's application is denied."

Thereafter appellant filed his notice of appeal from this decision and present counsel was appointed to represent him upon the appeal. The principal matter urged as error here is based on the failure of the trial court to order a sanity hearing for appellant at the time he was originally sentenced.

In approaching this matter it must be kept in mind the sanity of one charged with crime may involve two inquiries which are separate and distinct: First, sanity at the time of the commission of the alleged crime, and, second, sanity at the time of trial. The test of criminal responsibility differs from that of mental competency to stand trial (*State v. Andrews*, 187 Kan. 458, 357 P. 2d 739, cert. 'den. 368 U. S. 868, 7 L. ed. 2d 65, 82 S. Ct. 80). The test of responsibility for commission of crime in Kansas is what is commonly referred to as the M'Naghten rule, that is, whether the accused was capable of distinguishing between right and wrong at the time and with respect to the act committed (*State v. Andrews*, supra). Insanity at the time of the commission of crime is to be regarded as a defense in the criminal prosecution for such offense and as such it is to be presented and determined during the trial (*Fisher v. Fraser*, 171 Kan. 472, 233 P. 2d 1066), and such question cannot be raised or considered in a 60-1507 proceeding inasmuch as the guilt or innocence of a convicted person is not properly justiciable therein (*Kiser v. State*, 196 Kan. 736, 413 P. 2d 1002). Hence appellant's allegation in his 1507 motion that he was insane at the time of the commission of the alleged offenses affords no ground for relief.

The mental competency of an accused to stand trial was considered in *State v. Severns*, 184 Kan. 213, 336 P. 2d 447, and the test thereof defined as follows:

". . . the test of insanity of an accused precluding his being *put on trial* for a criminal offense is his capacity to comprehend his position, understand the nature and object of the proceedings against him and to conduct his defense in a rational manner. Stated in different fashion, if the accused is capable of understanding the nature and object of the proceedings going on against him;

if he rightly comprehends his own condition with reference to such proceedings, and can conduct his defense in a rational manner, he is, for the purpose of being tried, to be deemed sane, although on some other subject his mind may be deranged or unsound." (p. 219.)

Appellant asserts that the trial judge erred in not ordering a sanity examination prior to arraignment inasmuch as he had knowledge of appellant's mental deviation. Such hearing could have been had pursuant to G. S. 1949 (now K. S. A.) 62-1531 which provides:

"Whenever any person under indictment or information, and before or during the trial thereon, and before verdict is rendered, shall be found by the court in which such indictment or information is filed, or by a commission or another jury empaneled for the purpose of trying such question, to be insane, an idiot or an imbecile and unable to comprehend his position, and to make his defense, the court shall forthwith commit him to the state hospital for the dangerous insane for safekeeping and treatment; and such person shall be received and cared for at the said institution until he shall recover, when he shall be returned to the court from which he was received to be placed on trial upon said indictment or information."

Implicit therein is recognition that an insane person cannot be required to plead to a criminal charge and cannot be tried.

In *State v. Collins,* 162 Kan. 34, 174 P. 2d 126, the court, with respect to the application of the foregoing statute, held:

"The manner in which the necessity for an inquiry concerning a defendant's insanity is raised is not of much importance. If the court learns from observation, reasonable claim or credible source that there is real doubt of defendant's mental condition to comprehend his situation or make his defense it is the duty of the court to order an inquiry concerning the matter." (Syl. ¶ 2.)

This duty was considered in *Brewer v. Hudspeth,* 166 Kan. 263, 200 P. 2d 312, a proceeding in habeas corpus where, as here, as a ground for relief it was urged the district court erred in not having a hearing prior to the plea of guilty to determine petitioner's mental competency. In that case petitioner was sentenced to the penitentiary upon his pleas of guilty of the offenses of burglary and larceny. Pursuant to then existing statutory direction the trial judge at the time of commitment wrote a letter to the warden of the penitentiary reciting a long history of petitioner's difficulty with the law from childhood as well as a history of insanity of other members of his family and expressing the opinion that petitioner was "doubtless below par mentally." Knowledge of the trial judge concerning the petitioner was further reflected by the following:

"A supplemental affidavit of the district judge filed by respondent, in substance, discloses:

". . . he inquired of peace officers into the history and background of petitioner and was informed as follows:

" 'Petitioner desired to enter his plea as soon as possible; that approximately thirty or thirty-five years ago and prior to the birth of petitioner the father of petitioner had escaped from a mental institution in the state of Missouri; that continuously since that escape the father had lived in Treece, Cherokee County, Kansas, had worked as a miner and had lived a normal life other than as previously stated; petitioner's father and all of his brothers were high tempered, addicted to drinking and all of the male members of the family had been in trouble numerous times and had been convicted numerous times of various offenses including larceny, drunkenness and peace disturbance; several years ago an older brother of petitioner was shot and killed by a police officer in the performance of his duty; another older brother of petitioner had been inducted into the armed services of the United States during World War II and had "cracked up" while in the service and following his discharge had been in various veterans' hospitals due to a mental disorder.'

"The affidavit, in substance, further discloses affiant did not know the exact nature of the latter brother's disorder but that his mental disability had been established as 'service connected'; that petitioner was rejected by the army because of 'mental inaptitude'; that on arraignment petitioner did not display any unusual or abnormal conduct but appeared to be aware of and to understand the proceedings; it was not suggested by anyone that petitioner was not competent and able to comprehend his position or that formal inquiry should be made into his mental condition; affiant did consider petitioner to be of below average mentality but that he believed him to know the nature and quality of his actions and able to comprehend his position; *affiant entertained no real doubt as to petitioner's sanity or his mental capacity to defend himself properly.*" (pp. 266, 267.)

On the question as to whether the trial court erred in the Brewer case in not ordering a sanity hearing this court stated:

"The precise question presented is whether, in view of the record now before us, we can say, as a matter of law, the district court was obliged to entertain real doubt concerning petitioner's competency to enter his plea. If the court entertained such doubt it was required to order a hearing on its own initiative. Petitioner at the time of sentence was not quite twenty-two years of age. There was no suggestion of incompetency by the county attorney or by counsel who represented petitioner at the trial. Their affidavits, in effect, disclose there was nothing about petitioner's conduct to indicate he did not fully understand his rights or anything suggestive of inability to properly defend himself. Their affidavits, in effect, show that, in their opinion, there was no occasion for a sanity hearing. The affidavit of the undersheriff is to the same effect.

"Of course, the fact these officers were aware of nothing to indicate petitioner's incompetency to enter his plea, if it existed, would in nowise relieve the court of its duty to order a hearing if it learned from observation, reasonable

claim or any other credible source that real doubt existed concerning petitioner's mentality to comprehend his situation and to make his defense. These principles are established by a long line of decisions of this court and need not be reviewed. These and decisions from other jurisdictions were rather recently reviewed in a case in which the identical question of the court's duty to order a sanity inquiry on its own initiative was presented. (*State v. Collins*, 162 Kan. 34, 174 P. 2d 126.)

"On that point we held:

" 'It is the trial court in whose mind a real doubt of sanity or mental capacity to properly defend must be created before that court is required to order an inquiry solely on its own initiative. The necessity for an inquiry under such circumstances addresses itself to the discretion of the court and its decision will not be disturbed in the absence of abuse of sound judicial discretion.' (Syl. ¶ 3.)

"The statement contained in the letter from the district judge to the warden that petitioner was below par mentally undoubtedly constituted a fair and sincere analysis by the trial judge. His supplemental affidavit frankly recognizes the content of that letter but definitely shows petitioner's mentality was not of a sort to create a real doubt concerning his sanity or his mental capacity to defend himself properly; that he believed petitioner knew the nature and quality of his acts and was able to comprehend his position.

"Everyone, of course, recognizes there exists a wide range between insanity and mentality which is merely below normal. Many people are below normal mentally and yet exceedingly able in many respects.

"Careful analysis of the record, including the affidavits of the district judge, convinces us that although it would have been entirely proper to have had an inquiry we are not prepared to say the court abused sound judicial discretion in not ordering it. Here as in cases involving other factual questions the trial judge is in a far better position to view and evaluate the actions, demeanor and capacity of a defendant than is this court." (pp. 268, 269.)

Considering the facts in the case at bar in the light of the foregoing we cannot say as a matter of law that the sentencing court erred in failing to order a sanity hearing for appellant at the time he entered his plea of guilty. Unquestionably appellant had aberrant traits. This was known to the sentencing judge but it does not necessarily follow that appellant was mentally incompetent to stand trial for behavior which society deems objectionable.

Appellant argues that he was insane as a juvenile in 1956 because he was hospitalized and that this insanity must have continued through his Stafford county prosecution in 1961, but he proclaims he is now sane since his discharge from the Larned State Hospital. As pointed out by the trial court in the 1507 proceeding there had never been an adjudication of insanity. The fact that psychiatric treatment was indicated and received by appellant would not render him immune to criminal prosecution because of mental

incompetency nor impeach a judgment already reached. Appellant was represented by retained counsel at the preliminary proceedings and by appointed counsel at the trial stage. Both were known to the trial judge as experienced, capable attorneys. No suggestion of mental incompetency to stand trial was made by anyone nor was there any indication of need for the same other than the propensity of appellant for the same type of behavior. This propensity would not affect his capacity to comprehend his position when charged criminally with the offenses of burglary and larceny, to understand the nature and object of the proceedings against him and to conduct his defense in a rational manner. The journal entry of his conviction establishes that all the formalities essential to proper arraignment and reception of a plea of guilty were observed, with careful inquiry by the trial court directed toward providence of appellant's plea of guilty. Nothing suggests that appellant was not fully aware of the nature of the proceedings. Our provision for hearing upon mental capacity to stand trial is justly designed for the protection of persons to be tried for crimes when they are incapacitated to defend themselves. However, it is not intended to furnish a technical means of nullifying judgments solemnly reached by judicial process. In order to reverse the judgment on the ground urged by appellant we would be obliged to hold, as a matter of law, that the knowledge the trial court had compelled it to entertain a real doubt with respect to appellant's capacity to make a proper defense. As stated, it was the trial court in whose mind a real doubt of mental capacity to defend had to be created (*State v. Collins*, supra). Many shades and degrees of mental illness may appear in the disposition of a criminal case. Evaluation thereof is best left in the sound discretion of the trial court which is in much better position to do so than an appellate court. We find no abuse of that discretion here.

Appellant further urges as error the fact that he was not present at the 1507 hearing. We do not agree. The circumstances here are such that the trial court, being the sentencing court, could completely resolve them by drawing upon his own personal knowledge and recollection and the record of the case. In his 1507 motion appellant raised nothing by way of factual allegation or substantiation of his claim, as he is obliged to do, that was not known to the trial court and considered by it. His claimed insanity was based only on factual allegations as to which there was no dispute.

Stated another way, there were no controverted issues of fact raised requiring the presence of appellant (see *Blacksmith v. State*, 195 Kan. 523, 407 P. 2d 486; *Call v. State*, 195 Kan. 688, 408 P. 2d 668, cert. den. 384 U. S. 957, 16 L. ed. 2d 552, 86 S. Ct. 1581, and see, also, *Burrow v. United States*, 301 F. 2d 442, cert. den. 371 U. S. 894, 9 L. ed. 2d 126, 83 S. Ct. 193; *Santos v. United States*, 305 F. 2d 372; and *Wheeler v. United States*, 340 F. 2d 119).

We have considered other matters complained of but find no merit in them. They were either not raised in the original motion or upon this appeal and hence are not reviewable, or they are covered in that which has already been said and deemed not to warrant further discussion.

The judgment denying relief is affirmed.

APPROVED BY THE COURT.