No. 48,276

STATE OF KANSAS, *Appellee*, v. ODESSA BUCKNER, *Appellant*.

(558 P. 2d 1102)

Opinion filed December 11, 1976.

*Elmer C. Jackson, Jr.,* of Kansas City, argued the cause, and *Courtland Berry,* of Kansas City, was with him on the brief for the appellant.

*Randy L. Baird,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Gene M. Olander,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Odessa Buckner was convicted by a jury of aggravated assault. Buckner was placed on five years' probation. She now appeals.

The incident in question occurred in front of appellant Buckner's residence in Topeka on May 22, 1974, at about 11:00 a. m. Mrs. Buckner had been having difficulty with the local newspaper company and its carrier over the delivery of her paper with the result the company decided it could no longer make carrier delivery to her. According to the state's evidence, on the morning in question, a representative of the paper, a Mr. Kelly, went to the Buckner home to return appellant's check for her subscription. Appellant refused to accept the check so Kelly slipped it through a crack in the door. As he was returning to his car appellant called for him to stop, saying she wanted to talk with him. When he did not stop appellant came outside her house with a .22 caliber pistol in her hand. She approached Kelly, grabbed some papers

from his shirt pocket and began shooting at him with the pistol. She was talking in an angry tone of voice and had the gun pointed toward Kelly while shooting. Kelly was frightened and ran to his car and drove away as quickly as possible. A next door neighbor who witnessed the episode testified appellant fired four shots at Kelly. Kelly drove immediately to the police station where he discovered a fresh cut in one of the tires on his car as well as a broken taillight.

The same morning, a person who identified herself as Mrs. Buckner, telephoned for the head of the newspaper company and told his secretary she had had a shoot out with Mr. Kelly, had shot at him and would do so again if he came back. Similarly the director of public affairs for the company received a call from someone identifying herself as Odessa Buckner. The caller complained that Mr. Kelly had been talking to the neighbors about her and that she had shot at him. The caller was upset about not having received her newspaper.

Later the same day a police detective went to appellant's home with a search warrant for her pistol. After conversing over the telephone with her then attorney appellant showed the officer where the pistol was. The weapon was fully loaded and with it was a container holding five spent cartridges. Thereafter appellant gave a signed statement to the detective in which she stated she "got mad" when Mr. Kelly returned her check and said they weren't going to deliver her paper any more and that she got her pistol, went outside and walked up to him and shot the gun two or three times in the air.

At trial appellant testified she had had trouble with paper delivery in 1968 and later in 1973 right up to the time of the shooting incident; that when Mr. Kelly made no response to her request to come back and talk to her she got her gun; she didn't intend to shoot him but was going to stop him; she never pointed the gun at him; because he had ignored her she knew that if she got her gun she could get the matter into court; she wanted to get Kelly's attention; she pointed the gun at his car and fired three times; she knew firing the gun was wrong but she wanted peace and consideration.

Appellant first complains the trial court erred in admitting over her objection the written statement obtained by the detective. Counsel asserts the statement was not voluntarily made but was

the result of her paranoid state of mind, her inexperience with criminal law and procedure and her inability to appreciate the consequences which might result from any statement.

An out of court suppression hearing was held on the statement. The officer taking it, Detective Beightal, testified he gave appellant the *Miranda* warning governing her constitutional rights, detailing them, and appellant said she understood those rights; that her eighty-two year old husband was present in their living room at the time, and appellant had just previously talked to her attorney. In *State v. Watkins*, 219 Kan. 81, 547 P. 2d 810, 824, we quoted principles for determining the voluntariness of a statement:

" 'In determining the voluntariness of a statement made by an accused the totality of the circumstances leading to and accompanying the giving of the statement should be considered. . . . Failure to have counsel present does not *ipso facto* make the statement involuntary. It depends upon the surrounding facts and circumstances. . . . Factors generally considered as bearing on the voluntariness of a statement by an accused include the duration and manner of the interrogation; the ability of the accused on request to communicate with the outside world; the accused's age, intellect and background; and the fairness of the officers in conducting the interrogation. The essential inquiry in determining the voluntariness of a statement is whether the statement was the product of the free and independent will of the accused. Generally if the accused was not deprived of his free choice to admit, deny or refuse to answer, the statement may be considered voluntary.' " (p. 97.)

In addition to the detective's testimony the trial court had before it a report by a psychiatrist, Dr. Russell O. Settle, of the Court Services Division of the Shawnee County Mental Health Center, to whom appellant had been referred for examination as to her competency to stand trial. This report noted certain questionable mental conditions at times in appellant's more recent life, including a degree of paranoid thought disorder wherein she believed herself to be the victim of persecution by neighbors and relatives, but it concluded she was aware of the nature and purpose of the proceedings against her and the function of various personnel connected with a jury trial and was mentally competent to undergo trial. The report further stated appellant's contact with reality was intact except in the area of her delusional beliefs, which were described in detail.

The test for determining whether a suspect is so mentally incompetent as to preclude his ability to make a voluntary confession is the same as the test for determining his criminal responsibility for committing the crime (*State v. Pyle*, 216 Kan. 423, Syl. para. 10,

532 P. 2d 1309). In Kansas this is the *M'Naghten* test, that is, whether the accused was capable of distinguishing between right and wrong at the time and with respect to the act committed (*Van Dusen v. State*, 197 Kan. 718, Syl. para. 2, 421 P. 2d 197). Appellant does not now nor did she at trial, contend she did not know right from wrong in her act of using the pistol, which incident` occurred shortly prior to the taking of the statement.

Notwithstanding appellant's contention to the contrary, it seems clear the trial court did not ignore, but considered, the relevant evidence on the voluntariness of appellant's statement. It concluded the statement was admissible as one voluntarily and intelligently given. There was no evidence of coercion, mental or physical, in its making and under all the evidence the court could reasonably have reached the conclusion it did. When the trial court conducts a full preliminary inquiry on the admissibility of an extrajudicial statement given by an accused, determines it was freely, voluntarily and intelligently given and admits the statement into evidence at the trial, this court on appeal accepts that determination if it is supported by substantial competent evidence (*State v. Brown*, 217 Kan. 595, Syl. para. 4, 538 P. 2d 631).

Appellant asserts error in the trial court's refusal to admit into evidence a memo prepared by Detective Beightal in an investigation he made of an incident in which appellant was involved about a year prior to that in question here. Although no showing is made in the record as to the contents of the memo, and appellant might well be foreclosed from raising the point for that reason, she says in her brief the detective included in the memo his opinion of appellant's mental condition at that time, which the jury should have had. In denying admission of the memo the trial court ruled that appellant might cross-examine the detective concerning its contents. This appears to have been done, the detective did testify as to his opinion of appellant's mental condition upon that occasion and the subject was fully developed before the jury. Nothing prejudicial to appellant resulted in the matter complained of.

Appellant contends the assistant district attorney misstated certain facts in his closing argument. The judgment cannot be disturbed on this score for any of three reasons: (1) The record does not contain the argument asserted now to be erroneous; (2) so far as we can tell no objection was made at trial level and it is being asserted for the first time upon appeal; (3) in her brief appellant does specify that which she now deems to be inaccurate but the state

responds in its brief with evidence offered at trial which demonstrates the accuracy of the challenged statements.

Appellant next asserts error in the trial court's failure to instruct on the lesser included offense of assault. The point has no merit. K. S. A. 21-3107 (3) provides:

"In cases where the crime charged may include some lesser crime it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced, even though such instructions have not been requested or have been objected to."

This duty arises only where clearly required by the evidence and where the defendant might reasonably be convicted of a lesser offense if the instruction is given (*State v. Masqua*, 210 Kan. 419, 502 P. 2d 728).

Assault (K. S. A. 21-3408) is a lesser included offense under aggravated assault (K. S. A. 21-3410). As applicable here aggravated assault is assault committed with a deadly weapon (21-3410 [a]). It is undisputed that appellant used a deadly weapon, a gun, in the affray. By her own testimony she was going to stop Mr. Kelly, get his attention and get the matter into court. She admitted using the gun and firing several shots. There was no way appellant could properly have been convicted of assault had an instruction thereon been given. Under the evidence she was either guilty of aggravated assault or not guilty of anything.

Finally, appellant contends the evidence was insufficient to support the conviction. No argument beyond the bare assertion is presented and from the evidence already recited it is apparent none can be made.

The judgment is affirmed.

APPROVED BY THE COURT.