NOT DESIGNATED FOR PUBLICATION

No. 123,325

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

OLEVIA JANE GILLESPIE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Harvey District Court; JOE DICKINSON, judge. Opinion filed December 23, 2021.
Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Kurtis Wiard*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: Olevia Jane Gillespie timely appeals the denial of her motion to
withdraw her no-contest plea prior to sentencing. The district court denied Gillespie's
motion, finding she had not shown good cause. Upon our careful review of the record and
briefs, we observe no basis to grant Gillespie the relief she seeks. We affirm.

FACTS

In November 2018, the State charged Gillespie with attempted aggravated
burglary, interference with law enforcement, endangering a child, battery, and criminal

1

trespass. These charges occurred after Gillespie and her mother went to her brother's apartment in August 2018 to retrieve a cat. Attorney Blake Cooper was appointed to represent Gillespie. In February 2019, the State sent Cooper a plea offer. On April 8, 2019, Gillespie met with Cooper and rejected the offer. After further discussion with the prosecutor on the phone, they reached a new agreement reflecting the State would drop another misdemeanor charge. Cooper explained the new agreement to Gillespie in detail.

The next day, Gillespie pled no contest to interference with a law enforcement officer and misdemeanor endangering a child. During the plea hearing while the district court was reviewing the agreement, Gillespie said something to her attorney not reflected in the transcript.

In response, the district court informed Gillespie no one was forcing her to plead guilty and she could schedule a trial if she wanted as it was her case. After speaking with Cooper—off the record—for a few minutes, Gillespie went forward with the plea. When Gillespie appeared for sentencing, she told the district court she wanted to withdraw the plea. The district court appointed her a new attorney who filed a motion to withdraw the plea. In her motion, Gillespie alleged good cause existed to withdraw the plea based on these facts:

- Cooper did not go over the State's initial offer with Gillespie until April 2019 even though the State sent it in February 2019.
- Cooper should have requested the district court reschedule the plea hearing to give Gillespie more time to consider the offer after she made a comment—off the record—that led the district court to stop the proceeding so she could speak with her attorney.

She further claimed:

- At the time of the plea she was suffering from premenstrual dysphoria disorder, which causes depression, tension, and anxiety. She claimed she allowed herself to be talked into taking the plea without much thought in order to find some relief from her symptoms.
- The district court did not ask her whether she was satisfied with her counsel. She felt pressured to sign and proceed with the plea.

Two other points she raised in her motion but does not pursue on appeal:

- The crimes she pled no contest to were unsupported by the evidence and it was ineffective to have someone plead when the facts did not support the charges.
- Gillespie was not advised of the collateral consequences of pleading to endangering a child.

The district court set Gillespie's motion for a hearing.

*Cooper's Testimony*

Cooper testified that during their office conference on April 8, 2019, Gillespie rejected the State's initial offer. They called the prosecutor with a counteroffer which led to the new plea agreement. The plea agreement was substantially the same as the State's initial offer, except the State agreed to dismiss another misdemeanor charge. Gillespie was reluctant to take the plea offer, but Cooper believed she understood the offer and was entering it voluntarily, with full understanding and without coercion.

During the plea hearing on April 9, 2019, Gillespie said the plea was a miscarriage of justice, prompting the district court to take a recess for Gillespie to consult with

Cooper. When they spoke during the break, Gillespie was having reservations about taking the plea. Cooper told Gillespie he recommended taking the deal because he did not think they could get a better outcome at trial. However, he told her she had the right to go to trial if she wanted and to present witnesses. Gillespie never told him during the short recess she did not want to plead. After they spoke during the break, Cooper did not have any reservations about her entering the plea agreement, and he was comfortable in his recommendation to enter a plea given the facts of the case.

Cooper also testified he was unaware Gillespie was suffering from any medical condition; she did not tell him, and he had no reason to ask her. He admitted Gillespie seemed more anxious or uptight at the plea hearing than she had at his office the day before and she was agitated about the situation throughout.

*Gillespie's Testimony*

Gillespie testified she is diagnosed with premenstrual dysphoric disorder and takes anxiety medication and pain medication for the condition. She was suffering from symptoms of her condition on April 8 and 9, specifically severe pain in the abdomen, headache, and nausea. Gillespie told Cooper about her condition when the case began. However, she did not mention her symptoms to him on the day she pled but said she told him she was having symptoms the day before in his office. Gillespie admitted she never told Cooper she was taking medication to control her premenstrual dysphoric disorder.

Gillespie testified she was given the final written plea offer for the first time moments before she stepped into court and Cooper did not read it to her. Gillespie wanted to read the plea form but felt pressured to sign it immediately because they were in court. At the plea hearing the district court paused the proceeding because Gillespie said it was a "miscarriage of justice" and that "it was an injustice that [the case] wasn't being heard." During the break, Gillespie spoke with Cooper at defense counsel's table for five minutes.

4

Gillespie said she went through with the plea because her symptoms were affecting her cognitive understanding and because she thought that was what Cooper expected her to do. She was in pain on April 8 and 9, and the pain affected her ability to decide whether to plead. She said she did not think she had a choice but to plead. Gillespie said Cooper told her he was not going to trial and, if she lost, she would go to prison. She regretted signing the plea agreement and felt coerced by Cooper to do so.

*District Court's Decision*

The district court addressed the requirements of K.S.A. 2019 Supp. 22-3210 and determined that Gillespie was told of the consequences of her plea, the plea was voluntarily made, and there was a factual basis for the plea. The district court also considered the factors in *State v. Edgar*, 281 Kan. 30, 127 P.3d 986 (2006), for withdrawing a plea for good cause.

The district court reviewed the plea hearing transcript and noted all the times it gave Gillespie an opportunity to say she did not want to plead. Based on its review of the plea transcript, the district court found there was not good cause to withdraw the plea, stating:

> "I gave you every opportunity to not enter this plea bargain. . . . [E]very individual is different. I'll grant you that, but all you had to do was say yes, I want to take more time. It was obvious I would have given you more time and you didn't and now here we are.
> "So the motion to withdraw your plea is denied."

GILLESPIE FAILED TO SHOW GOOD CAUSE.

Gillespie argues the district court erred in denying her motion to withdraw the no-contest plea, claiming she was misled or coerced into entering the plea and the plea was

5

involuntary because she was suffering from a medical condition at the time of plea hearing. Gillespie argues the second *Edgar* factor supports her argument that good cause exists to withdraw her plea: She was misled and coerced into entering her plea. Gillespie also asserts the third *Edgar* factor supports her position by claiming that her medical condition resulted in an involuntary plea.

Under K.S.A. 2020 Supp. 22-3210(d)(1), a no-contest plea may be withdrawn before sentencing "for good cause shown and within the discretion of the court . . . ." When determining whether a defendant has shown good cause, a district court should consider the *Edgar* factors: (1) Was the defendant represented by competent counsel? (2) Was the defendant misled, coerced, mistreated, or unfairly taken advantage of? and (3) Was the plea fairly and understandingly made? *Edgar*, 281 Kan. at 36. "[C]ourts 'should not ignore other [non-*Edgar*] factors impacting a plea withdrawal that might exist in a particular case.'" *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020).

When the district court denies a defendant's motion to withdraw a plea before sentencing, the defendant must establish on appeal how the district court abused its discretion in denying the motion. 311 Kan. at 381. A judicial action constitutes an abuse of discretion if it "is arbitrary, fanciful, or unreasonable; is based on an error of law; or is based on an error of fact." *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). "Appellate courts do not reweigh the evidence or assess witness credibility. Instead, appellate courts give deference to the trial court's findings of fact. [Citation omitted.]" *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

*Was Gillespie misled or coerced into entering the plea?*

Gillespie argues she was misled or coerced into taking the plea because she believed Cooper would not take her case to trial and she could not ask for a new attorney. She said she was coerced into believing the "best legal advice" was taking a plea because

6

that was what Cooper advised her to do, and the district court said Cooper would provide the "best legal advice." Gillespie also argues Cooper only went over the basic tenets of the plea offer with her, she did not have a full written plea agreement to read until minutes before the hearing, and she never read over it with Cooper. Gillespie does not argue the district court made an error of law or fact, so our inquiry is limited to whether a reasonable person could take the view adopted by the district court.

The State responds Gillespie voluntarily entered the plea agreement and she was well informed of her ability not to accept it. The State claims this is evidenced by (1) her decision to reject the first plea offer presented to her, (2) the district court pausing the plea hearing to give her time to speak with Cooper, and (3) the district court's multiple instructions she did not have to plead if she did not want to and could take her case to trial. The State relies on *State v. Cook*, No. 119,620, 2019 WL 4725372, at *5 (Kan. App. 2019) (unpublished opinion), in which another panel of our court found the defendant understood he had a choice in pleading when he previously rejected "'a couple different plea agreements.'"

The State also asserts the fact Gillespie only received the written plea agreement shortly before the hearing is of no consequence because Cooper reviewed the initial plea agreement with her in detail. The only difference between the first offer she rejected and the second plea agreement she negotiated was the benefit of having an additional misdemeanor charge dropped.

The district court recounted how Gillespie was provided with the State's initial offer when she visited Cooper's office on April 8 and the only difference was that one misdemeanor charge was dropped at her request. "Now, true, apparently the written plea agreement wasn't tendered to her until prior to the hearing on April 9th, yet it wasn't very difficult to understand and there's no dispute that Ms. Gillespie, on April 8th, [agreed] to

7

take the deal. Pretty simple." The district court did not find Gillespie's argument she was coerced into pleading persuasive.

At the motion hearing, the district court heard Gillespie's argument that Cooper made her feel like he would not take her case to trial and she was tied to the plea agreement. Gillespie also argued she felt like she had no option but to plead because even though Cooper may have told her they could try the case if she wanted, he told her many times in his opinion he would plead.

The district court concluded discussion of that *Edgar* factor by saying, "If not Mr. Cooper, then me. I told you you could do anything you want to at a trial whatever you wanted to." The district court advised her of this before it gave her time to confer with Cooper and again before she entered her plea. Although the transcript is inaudible in places, it sufficiently reflects the district court analyzed Gillespie's motion while considering the *Edgar* factors to deny her motion.

Reasonable people could agree with the district court that Gillespie was not misled or coerced into pleading or believing she could not take her case to trial. The testimony reflects when the district court took a short recess during the plea hearing, Cooper told Gillespie he recommended the plea but that she had every right to a trial if she wanted. And the district court informed Gillespie multiple times she did not have to plead and she could still have a trial if she wanted to. Gillespie pled no contest after the district court informed her of the consequences of her plea and of the rights she was giving up by pleading. Based on these facts, the district court did not abuse its discretion in determining Gillespie was not misled or coerced into pleading no contest.

*Gillespie's medical issues are unsubstantiated.*

Gillespie also argues her plea was involuntary because she was suffering from premenstrual dysphoric disorder the day of the plea hearing and could not think clearly. She argues her medical condition caused her to accept the plea despite her true desire to take the case to trial. Gillespie says the physical pain and mental stress caused her to enter an involuntary plea and once her symptoms stopped and she could think clearly, she realized the plea was a miscarriage of justice.

The State responds Gillespie's medical condition did not affect her ability to understand the plea agreement. The State says: "It is simply unbelievable that her symptoms had no effect on her ability to reject the initial agreement but—the very next day—rendered her powerless to refuse the second, more advantageous offer." The State also notes Gillespie never told Cooper or the district court she was suffering from an illness and she did not call a medical professional to verify the effect her medical condition had on her ability to enter her plea.

Gillespie states in her brief: "To voluntarily enter a plea, a defendant must be competent," citing *Van Dusen v. State*, 197 Kan. 718, 723, 421 P.2d 197 (1966). In Kansas, a defendant is incompetent when he or she "is unable: (a) To understand the nature and purpose of the proceedings against him [or her]; or (b) to make or assist in making his [or her] defense." K.S.A. 22-3301(1). Nothing in the facts indicates Gillespie did not understand the proceedings against her. Gillespie's testimony reflects she was experiencing pain in her abdomen and had a headache and nausea, and she claimed some of her symptoms were playing into her cognitive understanding. She did not testify she did not understand her plea or it was involuntary.

At the plea hearing, Gillespie stated she completely understood her legal rights. At the motion hearing, the prosecution questioned Gillespie regarding her understanding at the plea hearing:

> "[PROSECUTOR]: Okay. Do you recall the Court asking you—I believe at least a couple of times—that you don't have to plead today, that you could take everything to trial, that you would have a right to have witnesses subpoenaed? And everything you said you didn't understand, do you recall the Court asking that and you saying yes, you understood?
> "[DEFENDANT]: I understood that, yes."

The district court heard Gillespie's testimony and determined her medical claims did not constitute good cause to withdraw the plea.

Reasonable people could agree with the district court that Gillespie's plea was voluntarily and understandingly made. The district court explained to Gillespie her rights and told her several times she did not have to plead and the matter could be set for trial. Although she now claims her plea was involuntary because she was suffering from premenstrual dysphoric disorder, she has not explained how her symptoms rendered her incompetent or prevented her from understanding the consequences of her plea.

The district court did not abuse its discretion when it found Gillespie failed to show good cause to withdraw her no-contest plea.

Affirmed.