NOT DESIGNATED FOR PUBLICATION

No. 124,181

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LONNIE RAY GILLIS JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Opinion filed June 10, 2022. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Kayla L. Roehler*, assistant district attorney, *Marc A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN and GARDNER, JJ.

PER CURIAM: Lonnie Ray Gillis Jr. pleaded guilty to one count of possession of methamphetamine. Four months after sentencing, Gillis filed a motion to withdraw his plea, contending that his mental illness prevented him from understandingly entering his plea. The trial court denied Gillis' motion to withdraw, and Gillis appealed. We affirm.

1

On June 6, 2018, the State charged Gillis with one count of possession of methamphetamine in Wyandotte County case No. 18 CR 580. On December 18, 2018, Gillis pleaded guilty to possession of methamphetamine. At the same time, Gillis stipulated to violating the conditions of his probation in another pending Wyandotte County case, No. 16 CR 538.

Before accepting Gillis' plea, the trial court engaged an extensive examination about the rights Gillis was waiving by entering his plea. As part of the colloquy, the trial court specifically inquired about Gillis' mental clarity. Specifically, the trial court asked the following questions regarding mental competence.

> "THE COURT:  As you sit here today, are you under the influence of any alcohol?
> "THE DEFENDANT:  No, sir.
> "THE COURT:  Are you under the influence of any drugs?
> "THE DEFENDANT:  No, your Honor.
> "THE COURT:  Are you on any type of prescription medication?
> "THE DEFENDANT:  No, your Honor.
> "THE COURT:  So is your mind clear here today?
> "THE DEFENDANT:  Yes.
> "THE COURT:  Do you understand what you are charged with in the 18CR0580 case?
> "THE DEFENDANT:  Yes, your Honor.
> "THE COURT:  Do you understand that you are not required to change your plea?
> "THE DEFENDANT:  Yeah.
> "THE COURT:  Do you understand that you have an absolute right to a trial by jury?
> "THE DEFENDANT: Yes."

After accepting Gillis' plea, the trial court addressed a question raised by Gillis regarding his ability to pay his offender registration payments while waiting for his sentencing hearing. Specifically, Gillis expressed concern that a warrant would be issued

against him if he did not make a payment while in custody. Addressing these concerns, Gillis and the trial court discussed at length his financial resources and ability to make the payments. Ultimately, Gillis' attorney offered to investigate the issue on Gillis' behalf after the hearing.

On February 7, 2019, the trial court held a combined sentencing and probation revocation hearing for both cases. Before the hearing, Gillis sought a dispositional departure to probation in the new possession of methamphetamine case, No. 18 CR 580. In addition, Gillis asked the court to continue his probation in the other pending criminal case, No. 16 CR 538. In support, Gillis asserted that he suffers from schizophrenia and wanted to continue seeking treatment.

The court denied Gillis' motion for departure and, instead, sentenced him to a 37-month prison term for the possession of methamphetamine conviction in case No. 18 CR 580. In addition, the court revoked Gillis' probation in case No. 16 CR 538 and imposed a 216-month prison term. The trial court ordered that both sentences run consecutive. This is an appeal from case No. 18 CR 580.

The court explained its reasoning for denying Gillis' departure motion, in relevant part, as follows:

"THE COURT: Well, I've spent a long time today looking at this case, looking at the [presentence investigation report], looking at the prior case, looking at the motion once I got it, listening to what I've heard here today.
"Mr. Gillis, they've had probably—within this system of Wyandotte County, he's had a probation officer, Miss Thorpe, who is probably the most experienced, probably the most educated person we have within our system when it comes to dealing with defendants who have mental health issues. And she will go the distance to help a person.
"Mr. Schneider, as he said, deals with care and treatment cases.

3

"Ultimately, though, when others are having to work harder than the defendant, there—it indicates to this Court that that defendant is not going to do what they're supposed to do. This Court gave him an opportunity in the '16 case to do what he was supposed to do. Clearly, it sounds like Mr. Carney and Mr. Schneider worked very hard in this case and the case before the Court for sentencing to try to work out a deal for Mr. Gillis, giving him an opportunity to go to Wyandotte Mental Health, to go to RSI and get stabilized. He then didn't show up.

"Mr. Gillis, it is always hard on a court, and I'm very familiar with defendants who have mental health issues. But my job is not only to take you into consideration, but I look at your record and I see that you've had many, many felonies before. And I look at what you've done in this case and take that into consideration.

"And based on that, I'm going to sentence you to the Department of Corrections for a term of 40 months—or 37 months. Sorry. 37. That will be consecutive to Case Number 16CR0538. Post-release will be twelve months.

"I have read your motion for departure, and I am denying it at the time."

Four months later, on June 14, 2019, Gillis moved to withdraw his plea in case No. 18 CR 580, alleging that his mental illness prevented him from understanding the plea proceedings.

On July 9, 2019, the trial court conducted an evidentiary hearing on Gillis' motion to withdraw his plea. At the hearing, Gillis testified on his own behalf. Gillis began by explaining that when his plea hearing was held, he had only recently started on a new medication to treat his schizophrenia. Gillis testified that the medication, which he had taken for two weeks, was not working well, and that, as a result, he was distracted by auditory hallucinations during his plea hearing. Gillis further testified that, when the judge asked him questions regarding his plea, he was "getting claustrophobic" and was "just trying to get out of the courtroom."

Additionally, Gillis testified that, shortly before the hearing, his girlfriend had died of AIDS and that he had similarly been diagnosed with HIV, which further clouded his

4

thinking at the plea hearing. Finally, Gillis testified that it was not until he was transferred to El Dorado Correctional Facility after his plea hearing and after he started a different medication that he realized his mental illness had prevented his full participation during his plea hearing and that he did not understandingly enter his plea.

Despite Gillis' testimony, at the conclusion of the evidentiary hearing, the trial court denied Gillis' motion to withdraw his plea, explaining that Gillis had not demonstrated manifest injustice sufficient to warrant granting his motion. Specifically, the trial court concluded, in relevant part, as follows:

> "THE COURT: Well, the issue before the Court—and you both know the factors the Court has to look at. And this case really comes down to, since he's not arguing ineffective assistance, is did he understand what he was pleading to? Did he understand the consequences of his plea?
>
> "And in this case, what has been proffered or argued to the Court is because of his mental illness, which is schizophrenia in this case, that diagnosis, that on the day of the plea that he was suffering from symptoms. I think his testimony was that he was hearing voices at the time of the plea, was having a hard time concentrating, and was not really paying attention. And I think he said at some point that he just wanted to get out of the courtroom, is what I recall.
>
> "So what the Court has to determine is did the defendant knowingly, intelligently, and voluntarily enter into that plea? Was he coerced in any way? Did he understand what he was pleading to? Was he—anything like that.
>
> . . . .
>
> "According to State Exhibit 1, at the time of the plea he was 38 years old, so he had been—at least 20-some-odd years he had had a diagnosis of schizophrenia.
>
> "As both of you know, many people suffer from mental illness and can clearly get by in this—in society and function. The issue before the Court is, on the day in question, did he understand what he was doing? And was he coerced in any way? Did he not understand what he was doing under the factors?
>
> . . . .

5

"As far as the—his diagnosis and his testimony regarding what occurred on the day in question, this Court's—and I don't have the transcript. It's not been prepared. It's not been given to this Court as to what occurred. I do have State Exhibit 1. And clearly he's indicated that he remembers this Court asking him questions. He remembers this Court asking if his mind was clear and him saying to the Court, 'Yes.' He remembers asking if he wanted to plead guilty and that's what he wanted to do, and he said, 'Yes.' He remembers signing the document. He remembers you going over the document with him. And in that document he indicates that his mind was clear at the time.

"This Court's practice—and I'm—without having the transcript to tell me otherwise, this Court's practice has always been when it takes a plea that it goes over that issue about whether a defendant's mind is clear at the time of the plea and whether they are under the influence of alcohol, whether they're under the influence of any drugs such as cocaine, methamphetamine, any illegal drugs, and ask the defendant are they on any type of prescription medication. And if they indicate yes, then the Court asks them what it is and, you know, when's their last dose and what effect it has on them. And then I always ask the attorneys—the defense attorney because typically defense attorneys have more of an opportunity than the Court to converse and to relate to the defendant— whether they believe the defendant's mind's clear.

"Without having the transcript, I'm absolutely sure I asked those questions of Mr. Gillis. And clearly if I went on, I clearly believed that there was nothing that he presented to the Court at that time that indicated to this Court that he was—his mind was not clear.

"So that—I understand that he may suffer from schizophrenia, but that does not mean that he did not understand what was going on at the time. And his testimony and his cross-examination by the State would indicate that he did understand. And I believe that he, based on his—State Exhibit 1, based on his testimony here today, based on this Court's procedure—and I would have asked him at the very end too when it got to the part I asked him—you know, 'Do you have any issues with your attorney? Do you have any issues with the way he's represented you? Do you have any issues with the way the Court's treated you?' I would have asked him, 'Is there anything else you want to tell the Court?' And if he would have indicated to the Court at that time that there was an issue, this Court would have addressed it.

"And this Court finds that based on what's been presented today, and based on this Court's procedure, and based on State Exhibit 1, and based on the defendant's testimony, and taking what weight I give to the sister's testimony and to this issue of

6

surgery, I'm going to deny the motion to withdraw the plea and find that the defendant has not shown this Court that there's manifest injustice to allow him to withdraw his plea."

On July 9, 2019, the same day as the trial court's evidentiary hearing, Gillis filed this appeal, challenging the trial court's denial of his motion to withdraw plea.

ANALYSIS

*Did the trial court abuse its discretion by denying Gillis' postsentence motion to withdraw his plea?*

On appeal, Gillis argues that the trial court erred by denying his postsentence motion to withdraw plea. Gillis contends that he was not mentally competent at the plea hearing due to his mental illness. As a result, Gillis asserts that he did not understandingly enter his plea. Accordingly, Gillis argues that he has shown manifest injustice to warrant withdrawing his plea.

Before we begin, we note that Gillis' motion to withdraw his plea is timely. A postsentence motion to withdraw a plea must be filed within one year of either: "(A) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or (B) the denial of a petition for a writ of certiorari to the United States supreme court or issuance of such court's final order following the granting of such petition." K.S.A. 2021 Supp. 22-3210(e)(1). Gillis filed his motion the same day as sentencing; and it was, therefore, timely filed.

Generally, appellate courts review a trial court's decision to deny a postsentence motion to withdraw a guilty or no-contest plea for an abuse of discretion. *State v. Cott*, 311 Kan. 498, 499, 464 P.3d 323 (2020). A judicial action constitutes an abuse of discretion only if: (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error

7

of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). The movant bears the burden to prove the trial court erred in denying the motion. *State v. Fox*, 310 Kan. 939, 943, 453 P.3d 329 (2019).

Gillis contends that due to his mental illness he did not understandingly enter his plea, thus demonstrating manifest injustice to warrant withdrawing his plea. "To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 2021 Supp. 22-3210(d)(2). Factors a court generally considers in determining whether a defendant has shown the manifest injustice necessary to withdraw a plea after sentencing mirror those considered when reviewing for good cause to support a presentence motion. See *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018).

In particular, when determining whether a defendant has demonstrated good cause to withdraw his or her plea, a trial court generally looks to the following three factors from *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006):  (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020). These factors should not be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). These factors establish "'viable benchmarks'" for the trial court when exercising its discretion, but the court should not ignore other facts that might exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016). In this case, Gillis argues that the third factor applies, asserting that, due to his mental illness, he did not understandingly enter his plea.

To be constitutionally valid, guilty or no-contest pleas and their resulting waiver of rights "'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Edgar*, 281

Kan. at 36-37. Further, in order for a plea to be "voluntary" a defendant must be competent. *State v. Shopteese*, 283 Kan. 331, 341, 153 P.3d 1208 (2007). "[A] person is 'incompetent to stand trial' when he is charged with a crime and, because of mental illness or defect is unable: (a) To understand the nature and purpose of the proceedings against him; or (b) to make or assist in making his defense." K.S.A. 22-3301(1). If a defendant is capable of understanding the nature and purpose of the proceedings and can help in his defense in a rational manner, then he is competent. *Van Dusen v. State*, 197 Kan. 718, 722-23, 421 P.2d 197 (1966).

At the plea hearing, Gillis acknowledged each of his rights he was waiving before entering his plea. Gillis testified that he was not under the influence of drugs or alcohol. Further, Gillis testified that his mind was "clear" before entering his plea.

Additionally, Gillis was an active participant in his own plea hearing. Specifically, during the hearing, Gillis had the mental clarity and foresight to anticipate that he would be in custody following the hearing until his sentencing later. As a result, when given an opportunity to ask questions regarding his plea, Gillis, himself, asked the trial court how his custody would affect his ability to pay his offender registration payments. According to Gillis, he did not want a "warrant" to be issued for falling behind on his payments. Thereafter, Gillis personally engaged in a lengthy conversation with the trial court regarding his financial resources and his ability to make these payments.

Gillis argues that he was hearing voices when he entered his guilty plea and, therefore, not competent to enter his plea. He is arguing that because he is mentally ill, he was incompetent and, therefore, he did not understandingly enter his plea. This argument is a non sequitur because its conclusion does not logically follow from its premises. Such a conclusion would render court review of criminal infractions committed by mentally ill individuals nonexistent. Nevertheless, just because someone suffers from mental illness

9

does not automatically mean that he or she is not competent to stand trial. See *State v. Hill*, 290 Kan. 339, 371, 228 P.3d 1027 (2010).

Gillis has the burden to show that the trial court abused its discretion by denying his motion to withdraw his plea. We conclude that Gillis has failed to show that the trial court abused its discretion by denying his motion to withdraw his plea. Accordingly, we affirm the trial court's order denying Gillis' postsentencing motion to withdraw his plea.

Affirmed.